This cause was argued at the last term, and at the present term the opinion of the Court was delivered by
 

 Mr. Chief Justice Marshall.
 

 This was an action of ejectment instituted by the defendants in error against the plaintiffs, to recover 640 acres of land in Montgomery county. Upon the trial in the Court below, the lessors of the plaintiffs, in support of their title, read in evidence a grant
 
 *120
 
 from the State of North Carolina to Stokeley Donaldson, dated the 12th of January, 1797; also a deed for the same land from the said Donaldson to John Love, dated the 13th of January, 1797, and registered in Montgomery county, on the 25th of July, 1815, upon- a probate made in the County Court of Grange county, at May term of the said Court, 1814.
 

 The defendants in that Court, to support their title, read in evidence a transcript of a record from the County Court of Montgomery county, at their July session of 1801, as follows, viz :
 

 “ Haydon Wells, who was appointed by the Court of Jantfary term, 1801, to receive the list of taxable property in Gaptain Boyd’s company, reports to Court a list of taxable property in the county of Montgomery, not listed for the year 1799, nor taxes paid thereon, to wit: among others, ‘ Stokeley Donaldson 2,560 acres on Yellow Creek waters.’ “ Haydon Wells, T. P.”
 

 “ Ordered, that the clerk make out a certificate of lands and tenements reported by Haydon Wells, Esq. for the year 1799, that are liable to the payment of taxes, agreeably to the 14th section of ‘ an act to ascertain what property in this State shall be deemed taxable, and the mode of collecting, accounting for, and paying public taxes.’ And now, to wit, at January term, 1802, the following proceedings were had thereon, to wit, on motion, it is ordered, adjudged, and decreed, that the tracts of land entered in the names of the following persons, be subject
 
 *121
 
 to the payment of taxes due thereon, agreeably to report of Haydon Wells, Esq. receiver of taxable property, as delinquent for the year 1799, agreeably to law, and that execution issue accordingly:” (among others,) Stokeley Donaldson, 11 dollars 90 cents. Upon which order or judgment, an execution, bearing date the fourth Monday in March, 1802, was issued to the sheriff of Montgomery county, commanding him, that of the lands of Stokeley Donaldson, reported to be in arrears for taxes for the year 1799, he cause to be made the sum -of 11 dollars 90 cents, as, also, the sum of 1 dollar 40 cents, and charges, &c. Upon this execution' the sheriff made the following return :
 

 t(
 
 Levied on 2133, and advertised agreeably to the old ; not sold, because the new act which requires it to. be advertised in the Gazette did not come forward till the day of sale.
 

 “ John Saunders, Sheriff M. C.”
 

 On the 1st of May, 1802, an alias execution issued, bearing date the fourth Monday in April, 1802, in the words of the former, on which the sheriff made the following return : “ The within land sold agreeably to law, on the 23d of July, 1802; at seven mills per acre.” They also read in evidence a deed, from John Cocke, Sheriff of Montgomery county, to Samuel Vance, one of the defendants, dated the 14th of April, 1808, reciting,- that whereas John Saunders, late Sheriff of Montgomery county, did, on the 23d of July, 1802, by virtue of an execution or order of sale, to him directed, from the Court of
 
 *122
 
 Montgomery county, expose to sale 2,560 acres of land granted to Stokeley Donaldson, or so much thereof as would be sufficient to satisfy the taxes due thereon for the year 1799, agreeably to an act of Assembly in such cases made and provided. And whereas Morgan Brown became the purchaser of 2,229 6-7 acres of the said land at seven mills per acre, he being the highest and best bidder, the taxes and costs due thereon being. 17 dollars 10 cents; and the said Morgan Brown having authorized a deed to be made therefor to Samuel Vance: Now, the said- John Cocke, in consideration of the said sum being paid to the said John Saunders, Sheriff, Sic. doth sell and convey the said 2,229.6-7 acres of land, &c. The said deed, then described one tract of 640 acres, the tract in question; also, two other tracts of 640 acres each; also, one other part of a survey of land of 309 acres granted to Stokeley Donaldson.
 

 The lessors of the plaintiffs then introduced grants from the State of North Carolina to Stokeley Donaldson, all dated about the same time, for
 
 two
 
 different tracts of land of 640 acres each, a part of which are those described in the said Sheriff’s deed, all lying upon the waters of Yellow Creek, and proved that the same lay in one connection of surveys adjoining each other, but those described in the Sheriff’s deed were of much the greatest value.
 

 Upon this evidence the Court instructed the jury, that it was for them to determine whether the said lands in the said Sheriff’s deed mentioned, were the same lands which the former Sheriff Saunders had
 
 *123
 
 sold'or not. If not the same land, then the. said Sheriff’s deed was not good in law. And the Court farther instructed the jury, that the said record, or any thing therein contained, was not sufficient in law to authorize the sale of the lands made by the said Sheriff Saunders, nor the deed aforesaid made to the said Vance by the said John Cocke, the said successor of the said Saunders, and that the said sale and deed did not in law vest any title to said lands in the said Samuel Vance.
 

 To this instruction of the Court, the counsel for the defendants éxcépted. In consequence of this instruction, the jury found a verdict for the plaintiffs, and a judgment was accordingly rendered in their favour. The cause was then brought by writ of error to this Court.
 

 The objections made on the record to the title papers of the plaintiff, so far as respects their registration, have not been pressed in this Court, and do not appear tobe sustainable. The plaintiffs in error rely principally on the deed made by John Cocke, the sheriff of Montgomery county, on the 14th of April, 1808, and. insist that the instruction given by the Circuit Court to the jury, on this point, is erroneous.
 

 The validity of this deed depends on the act passed by. the Legislature of the State of Tennessee, on the 26th of October, 1797, respecting the collection of taxes. The 3d section of that act directs the Court of each county, at its session, in the mpnth of January, in each year, to appoint a justice of the
 
 *124
 
 peace, for each captain’s district in. the county, to receive lists of the taxable property, for the then present year.”
 

 The 5th section makes it the duty of the sheriff to discover, and report in writing, to the clerk of the Court, such taxable property as may not haye been returned within the time limited by law.
 

 The 6th section directs non-residents to return to the Court an inventory of their taxable property.
 

 The 9th section enacts, that if any non-resident “ shall fail, by himsfclf, his agent, or attorney, to return his, her, or their taxable property, as by the act directed, the property of such person, so failing, shall be liable, and stand bound to pay a fine of fifty dollars, and a double tax, to be collected and paid, as by this act directed, and the justice shall report the said property to the best of his knowledge and information as aforesaid.”
 

 The thirteenth section directs the sheriff, in the event of the non-payment of taxes by a specified time, “ to levy the same by distress and sale of the. goods and chattels of every person so neglecting.”
 

 And the 14th section directs the sheriff, in case there shall not be any goods and chattels on which distress may be made, to report the same to the Court of the county, whose duty it is “ forthwith to direct the clerk to make out a certificate of the lands and tenements liable for payment of the said taxes, together with the amount of taxes and charges due thereon.” This is to be published, and if no person shall pay the taxes and other charges, within thirty days, the “ Court shall enter up judg-
 
 *125
 
 tneht for the amount of taxes due,” &c. for which execution shall issue, under which execution the land may be sold and conveyed by the sheriff.
 

 That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power, must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognised in this Court. The validity of the sale and deed made by the sheriff of Montgomery county will then depend on the regularity of the order under which the sale was made, and on the question whether tha|, order, if erroneous, will still support the sale which has been made in pursuance of it.
 

 Previous to an order for the sale of lands for the non-payment of taxes, the sheriff is ordered to levy them by distress and sale of the goods and chattels of the delinquent; and if there be no such goods and chattels, he is to report, the same to the Court, as the foundation of any proceeding against the lands. By this act, no jurisdiction is given to the Court over the lands of a person who has failed to pay his taxes, until the sheriff shall report that there are no goods and chattels out of which the taxes may be made.
 

 This being an important fact on which the juris - diction of the Court depends, it ought, we think, to appear on record, either in the judgment itself, or in the previous proceedings.
 

 In this case no such report appears to have been
 
 *126
 
 made. Could it even be contended that this report might be presumed, the answer is, that the terms of the order exclude such a presumption. It would appear, that the report of the magistrate, that the land in question had not been listed, was made in July, 1801, and that the Court immediately, made that order which the law directs to be made on the sheriff’s'report, that there are no goods and chattels'; and this order , refers not to any report of the sheriff, no.t to any deficiency of goods and chattels,, but to the report of the justice of peace, that the lands have not been listed.
 

 This is not the only defect which appears in these-proceedings. Previous to an order for a sale of land, and subsequent - to the report of the sheriff, certain publications -are to be . made in the manner and form prescribed by the act.' These publications are indispensable preliminaries to the order of sale. They do not appear to have been made. The judgment against the íttnd was given at January term, 1802, on motion, without its appearing by recital or otherwise, that the requisites’of the law, in this respect, had been complied with, and. that the tax still remained unpaid.
 

 We think this ought to have appeared in the record.
 

 The argument is, that the judgment, for these errors in the proceedings of the County Court, may be voidable, but is not void; that until it be reversed, it is capable of supporting those subsequent proceedings which were founded on it.
 

 
 *127
 
 We think otherwise. . In summary proceedings,* where a Court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts, especially which give jurisdiction, ought to appear, in order to show that its proceedings are
 
 coram judice.
 
 Without this act of Assembly, the order for sale .would have been totally void. This act gives the power only on a report to be madé by.the Sheriff.: "This report. gives the Court jurisdiction; and without it, the Court is as powerless as if the act had neyer passed.
 

 In construing the acts of the Legislature of a State, the decisiQns of the State tribunals have always governed this .Court. In Tennessee, the question arising in this cause, after considerable discussion, seems to have been finally settled on principles which are thought entirely correct.' The case of
 
 Francis’ Lessee
 
 v.
 
 Washburn & Russell,
 
 reported in 5 Haywood, is this very case, and was decided as this case was decided in the Circuit. Court. On the authority of that case, and on principle, the Court is of opinion, that there is no error in the judgment of the Circuit Court.
 

 Judgment affirmed.