**Fred A. REECE, Plaintiff-Appellee,**

v.

**W. C. SCOGGINS, Individually and d/b/a SPKZ Company, Defendant-Appellant.**

**No. 73–3508.**

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1975.

Scott P. Crampton, Asst. Atty. Gen., William D. M. Holmes, Trial Atty., Meyer Rothwacks, Chief, App. Sec., Tax Div., Dept. of Justice, Washington, D. C., for Tax Div.

John W. Stokes, Jr., U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for IRS.

Charles D. Read, Jr., Decatur, Ga., for Scoggins.

A. Orville Bracey, III, Joe T. Taylor, William Robert Mellen, Atlanta, Ga., for plaintiff-appellee.

Before RIVES, GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

A taxpayer brought this action in the district court claiming that the Internal Revenue Service (IRS) did not comply with clear Congressional mandates in selling his land to satisfy a tax deficiency. The district court ruled that the IRS had indeed conducted the sale in an improper manner and ordered that the purchaser of the land release the property in return for a refund of the purchase price. The purchaser appeals from that decision. The IRS, a named defendant before the district court, has subsequently withdrawn from the case. Because we conclude that the IRS failed to meet a threshold procedural requirement of the statutory provision controlling tax sales, we affirm the decision of the district court.

The appellee Reece was the owner of a parcel of land which the IRS, acting pursuant to 26 U.S.C. § 6335,[1] sold to the

---

1. 26 U.S.C. § 6335 provides in pertinent part:
(a) Notice of seizure—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property . . ., or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, . . . in the case of real property, a description with reasonable certainty of the property seized.
(b) Notice of sale—The Secretary or his delegate shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made, or if there be

appellants Scoggins and the SPKZ Company to satisfy Reece's income tax liability of $33,763.93. The property in question, located in Butts County, Georgia, consists of approximately 130 acres of land divided by a highway; approximately 100 acres are north of the highway and 30 acres are south of it. At the time of the sale, the revenue agent concluded that the property, which was subject to a $22,000 mortgage, was worth $60,000, while an independent real estate appraiser determined that the land had a fair market value of $1,500 per acre which would give it a total value of well over $150,000.

On October 14, 1971, an IRS agent served notice on Reece that the IRS had seized the property in question because of his failure to pay certain income taxes. During the next two weeks, the agent twice visited Reece's home to give him notice of a public auction sale of the land but found no one at home and departed without leaving any written notice at the residence. The agent published notice of the sale in a newspaper circulated in Butts County and posted similar notices at the courthouse and various locations in the county. On November 2, the advertised date of sale, a certified letter containing notice of sale was delivered to Reece's residence but was later returned to the local IRS office marked "No response—left notice, dated 11–02–71." A similar letter was sent by regular mail but was not returned.

Reece admitted that he learned of the sale prior to November 2 although he denied receiving written notice. The record also contains evidence that Reece requested the IRS to postpone the sale.

On November 2, 1971 the IRS agent attempted to sell the property at public auction at the county courthouse, but the

---

no newspaper published or generally circulated in such county, shall post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof. . . .

(c) Sale of indivisible property—If any property liable to levy is not divisible, so as to enable the Secretary or his delegate by sale of a part thereof to raise the whole amount of the tax and expenses, the whole of such property shall be sold.

* * * * * *

(e) Manner and conditions of sale—

(1) Minimum price—Before the sale the Secretary or his delegate shall determine a minimum price for which the property shall be sold, and if no person offers for such property at the sale the amount of the minimum price, the property shall be declared to be purchased at such price for the United States; otherwise the property shall be declared to be sold to the highest bidder. In determining the minimum price, the Secretary or his delegate shall take into account the expense of making the levy and sale.

(2) Additional rules applicable to sale.— The Secretary or his delegate shall by regulations prescribe the manner and other conditions of the sale of property seized by levy. If one or more alternative methods or conditions are permitted by regulations, the Secretary or his delegate shall select the alternatives applicable to the sale. Such regulations shall provide:

* * * * * *

(D) Whether payment in full shall be required at the time of acceptance of a bid, or whether a part of such payment may be deferred for such period (not to exceed 1 month) as may be determined by the Secretary or his delegate to be appropriate.

* * * * * *

(F) Under what circumstances the Secretary or his delegate may adjourn the sale from time to time (but such adjournments shall not be for a period to exceed in all 1 month).

(3) Payment of amount bid—If payment in full is required at the time of acceptance of a bid and is not then and there paid, the Secretary or his delegate shall proceed to again sell the property in the manner provided in this subsection. If the conditions of the sale permit part of the payment to be deferred, and if such part is not paid within the prescribed period, suit may be instituted against the purchaser for the purchase price or such part thereof as has not been paid, together with interest . . .; or, in the discretion of the Secretary or his delegate, the sale may be declared . . . null and void for failure to make full payment of the purchase price and the property may again be advertised and sold as provided in subsections (b) and (c) and this subsection. . . .

highest bid received was only $25,000— well short of the deficiency amount. The agent, without declaring the land to be purchased by the United States, announced that the sale was adjourned for one week. While the notices posted at various locations in the county were changed to reflect the new auction date, no notice of the second sale was published in the county newspaper. Again, Reece may have been aware of the revised sale plans but received no written notice of the adjournment or the rescheduled sale.

At the November 9 auction, Scoggins offered the pre-established minimum bid price of $36,793.87. The IRS agent conducting the sale declared Scoggins the purchaser of the land, but did not require that Scoggins pay at that time or even make a downpayment. The IRS's notices of the sale had specifically provided that "full payment [is] required upon acceptance of highest bid." Three days later, on November 12, the IRS received a cashier's check for the proper amount from the SPKZ Company and immediately issued a certificate of sale to that party.

Reece contacted Scoggins in February and early March of 1972 and informed him of his intent to redeem the property pursuant to 26 U.S.C. § 6337.[2] No formal action was taken until March 11, 1972 at which time Reece presented a cashier's check, payable to himself, to Scoggins in the amount of the purchase price plus interest. Reece claimed that in a telephone conversation the previous day Scoggins had told him to bring a cashier's check without specifying who was to be payee; Scoggins claims that he had requested that the check be made payable to him, Scoggins. In any event, Scoggins refused to accept the check and release the land claiming that the 120 day statutory grace period for redemption had expired. Reece countered that this grace period was still operative since it had commenced on November 12, 1971, the date of payment, rather than on November 9, the date of sale.

In defending the judgment of the district court, Reece asserts that the IRS failed to comply with 26 U.S.C. §§ 6335 and 6337 in the following respects:[3] (1) no notice of sale was given to the taxpayer and no written notice was left at his home as required by § 6335(b); (2) the property in question was divisible, and under § 6335(c) should not have been sold in its entirety; (3) the IRS had no authority to "adjourn" the November 2 auction when insufficient bids were made, but should have declared the property purchased by the United States pursuant to § 6335(e)(1); (4) the IRS failed to notify the taxpayer of the "adjournment" or the subsequent sale on November 9; (5) the IRS failed to restore Reece's property to him after he effected a valid redemption under § 6337.

■ The facts surrounding this transaction suggest that the IRS handled this sale of land in a somewhat casual fashion. Each step of this tax sale seems to raise a different issue of statutory compliance. Because we determine, however, that the taxpayer never received the statutory notice of sale, we need not consider assertions of subsequent laxity. The sale was voidable *ab initio*.

■ We proceed from the proposition that § 6335 permitting the sale at public auction of a taxpayer's land to

---

2. The relevant portion of 26 U.S.C. § 6337 provides:

> (b) Redemption of real estate after sale.—
> (1) Period.—The owners of any real property sold as provided in section 6335, . . . shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 120 days after the sale thereof.
> (2) Price.—Such property or tract of property shall be permitted to be redeemed

upon payment to the purchaser . . . the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum.

3. The district court invalidated the sale because of the government's failure to give the statutorily required notice. It thus found it unnecessary to evaluate Reece's contentions that related statutory provisions were also violated.

satisfy a tax deficiency must be strictly construed. Johnson v. Gartlan, 334 F.Supp. 438 (E.D.Va.1971), rev'd on other grounds, 470 F.2d 1104 (4th Cir. 1973), cert. denied, 414 U.S. 865, 94 S.Ct. 122, 38 L.Ed.2d 85 (1973). The concept of a citizen's right, absent unusual circumstances, to the unobstructed control of his own land, free from arbitrary governmental interference, has long been a fundamental principle in our country's jurisprudence. As Mr. Chief Justice Marshall noted in 1821,

> [t]hat no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with the precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court.

Thatcher v. Powell, 6 Wheat. 119, 125, 5 L.Ed. 221, 222.

■ The reason for this notion of the inviolability of private ownership is indeed self-evident. Governmental seizure and sale of land is one of the most potent weapons in the government's tax collection arsenal. The consequences of seizure and sale are often staggering and irreversible; this action not only deprives a taxpayer of a sometimes significant capital investment but also denies him a source of additional income. Seizure and sale are therefore generally available only as a last resort. In recognition of the Damoclean nature of this ultimate weapon, Congress has imposed precise strictures on the seizure and sale of property to satisfy legitimate tax deficiencies. The § 6335 notice requirements are designed to protect the taxpayer by giving him an opportunity to be present at the tax sale and bid on the property. United States v. Conry, Civ. No. C–73–2041 (N.D.Calif, Dec. 28, 1973); 74–1 U.S. Tax Cas. ¶ 9187; Bartell v. Riddell, 202 F.Supp. 70 (S.D.Calif.1962). *Cf.* McAndrews v. Belknap, 141 F.2d 111, 114 (6th Cir. 1944). The language of this section is clear and mandatory; absent literal compliance with its provisions, the government sale of land cannot stand. Johnson v. Gartlan, *supra*; Margiotta v. District Director of Internal Revenue, 214 F.2d 518 (2d Cir. 1954). See also Bartell v. Riddell, *supra*; 9 Mertens, Law of Federal Income Taxation, § 49.-193, chap. 49, p. 340.

■ In this case, the government did not give the landowner the notice required by § 6335(b). This provision explicitly requires that the IRS must give notice in writing of an intended sale of seized land. This written notice is to be delivered to the landowner personally, or if he is not home, it may be left at his usual place of abode or business if located within the same internal revenue district as the seized land. If the landowner cannot be located, or if such abode or place of business does not exist, the written notice may be mailed to the taxpayer's last known address. I.R.S. Reg. § 301.6335–1(b)(1). In this case, the landowner never received written notice of the sale by any of the specified methods. While the IRS agent went to Reece's home, he did not deliver written notice or leave it at the taxpayer's home or place of business. The mailing of notice, even if done in a timely fashion, satisfies the statute only if the taxpayer has no dwelling or place of business within the revenue district. The IRS thus failed completely to comply with the notice provisions of the Code section governing tax sales of land. In these circumstances, we conclude that the district court was correct in vacating the purported tax sale and voiding the certificate of sale issued to the SPKZ Company.

We, of course, express no opinion as to the legitimacy of the IRS's deficiency assessment in this case, and we do not condone a taxpayer's failure to pay income taxes required by law. We merely conclude that when the government seeks to enforce the laws, it must follow the steps which Congress has specified.

The judgment of the district court is affirmed.