**HELMUTH W. KLAUK, Plaintiff**

**v.**

**AMERICAN SAMOA GOVERNMENT, Defendant**

High Court of American Samoa
Trial Division

CA No. 44-89

November 29, 1989

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: Plaintiff pro se
       For Defendant, Aitofele T. Sunia, Assistant Attorney General

Plaintiff taxpayer brings this action *pro se* to recover certain funds of his which the government seized for unpaid taxes by way of a levy on his bank account. Plaintiff denies owing any taxes and claims that the government's assessment of additional taxes and its collection thereof was "erroneous and illegal."

*Facts*

We find on the evidence that the Tax Office was, for a brief period between August 20 and October 12, 1984, active in the process

of examining plaintiff's returns for tax years 1981 and 1982. The examining agent assigned had proposed a disallowance of certain claimed deductions on the grounds that plaintiff had not provided substantiating records as requested of him. A copy of the agent's report explaining his proposed adjustments was sent to plaintiff together with a transmittal letter (30-day letter) dated September 26, 1984. Plaintiff did not respond to the options offered in the 30-day letter.

Quite surprisingly, the Tax Office did *not* thereafter process and mail out a statutory notice of deficiency (the 90-day letter). Except for a letter dated October 12, 1984, which demanded plaintiff's compliance with certain informational requests, there was nothing further done in these matters for the next two (2) years.[1]

On December 2, 1986, the Tax Office prepared and sent two notices to plaintiff. These notices contained the headings "FIRST NOTICE" and "STATEMENT OF TAX DUE." One notice was for tax year 1981 and it stated "assessed tax" in the amount of $1,158.00, with penalty of $327.00 and interest at $538.37, for a total of $2,023.49. For tax year 1982, the other notice stated the "assessed tax" as being $1,438.00; penalty as $256.36; and interest at $368.91, totalling $2,063.27. When plaintiff received these notices, he simply wrote the Tax Office advising that he had paid his taxes for the tax years referenced.

On May 1, 1987, the Tax Office next sent out a further notice to plaintiff which contained the notation "FINAL NOTICE." This notice demanded payment of the taxes claimed as due and owing from taxpayer, and it also cautioned that certain collection means, including the power to levy bank accounts, were, by statute, available to the government. Plaintiff, in turn, gave the Tax Office the same response he had given to the notices earlier sent.

On or about August 4, 1987, the government, after making further adjustments for additional penalties and interest, levied plaintiff's savings bank account and seized $4,256.46.

---

[1]    The Court was given the explanation that an ongoing suit by plaintiff, which related to some dispute about his 1983 income tax return, had apparently distracted attention from the proceedings involving the 1981 and 1982 returns. To compound matters, the examining agent subsequently resigned and the returns in question were further overlooked.

*Discussion*

*A. The Levy*

For purposes of income taxation in the Territory, the Fono has simply incorporated by reference the United States Internal Revenue Code of 1954, hereafter referred to as the "Code." *See* A.S.C.A. § 11.0403. The power of levy and distraint over a taxpayer's property is provided in 26 U.S.C. § 6331(a), and may be invoked without the intervention of the judicial process. *United States v. Eiland*, 223 F.2d 118 (4th Cir. 1955). This power has been described as "a summary non-judicial process, a method of self-help authorized by statute which provides the [government] with a prompt and convenient method for satisfying delinquent tax claims." *United States v. Sullivan*, 333 F.2d 100, 116 (3rd Cir. 1964). This broad administrative power is drastic, however, and as one commentator has explained:

> it is based on the theory that the taxpayer has already had the opportunity at this stage to invoke his administrative and judicial remedies to redetermine or to set aside the asserted tax liability, and that he is now at the stage where he owes a tax liability that he refuses or neglects to satisfy.

Chommie, Federal Income Taxation 923 (2d ed. 1973).

In the present case, the evidence clearly demonstrates that the government simply ignored the administrative process mandated by the Code. In the normal course, the Tax Office is first required to mail the taxpayer a statutory notice of deficiency (the 90-day letter) by registered mail. *See* 26 U.S.C. § 6212(a). The Code further provides that within 90 days after the notice of deficiency is mailed, the taxpayer may file a petition with the Tax Court[2] for a redetermination of the deficiency. Until such a notice has been issued, the assessment or collection of any deficiency, whether by levying on or otherwise seizing a taxpayer's property, is *expressly* prohibited by the provisions of 26 U.S.C. § 6213(a). In view, therefore, of its omission in this case to issue the required deficiency notice pursuant to 26 U.S.C. § 6212(a), the

---

[2]    The High Court has exclusive and original jurisdiction with respect to American Samoa income tax proceedings. A.S.C.A. § 11.0408. The High Court sits as a Tax Court in deficiency proceedings, and otherwise as a District Court when hearing refund cases. A.S.C.A. § 11.0401; *Patu v. Westervelt*, 4 A.S.R. 818 (1974).

government not only lacked the power of self-help when it levied plaintiff's bank account, it violated a clear statutory prohibition against the use of self-help. It acted illegally.

A number of observations giving cause for concern may be made in the light of events. Firstly, the Court's jurisdiction in a deficiency proceeding initiated by taxpayer is dependent on the issuance of a 90-day notice,[3] and the statute providing for the 90-day notice[4] is as binding on the government as upon plaintiff. *Maxwell v. Campbell*, 205 F.2d 461 (5th Cir. 1953). The government's failure in this case to issue the 90-day notice had, therefore, effectively deprived plaintiff of his option to litigate the Tax Office's claim of deficiency as provided by 26 U.S.C. § 6213(a). This option was specifically given by Congress to overcome the potential hardship associated with having to first pay out the Internal Revenue Service's determination of a deficiency before one is afforded the opportunity to litigate that determination. *Laino v. United States*, 633 F.2d 626 (2nd Cir. 1980). "[Section 6213(a) is a]n essential part of the whole statutory scheme of furnishing the taxpayer with an option . . . to apply for relief to the Tax Court, . . . [and] was not enacted as mere idle gesture." *Maxwell v. Campbell*, 205 F.2d at 463.

Secondly, a distraint on and seizure of a taxpayer's property presupposes in the normal case that a prior and valid deficiency assessment has been made. 26 U.S.C. § 6212(a). In turn, a valid assessment presupposes that: (a) the government has prepared and sent the required 90-day notice to taxpayer;[5] and (b) the statute of limitations, 26 U.S.C. § 6501(a), has not run.[6]

The outcome here has been a total disregard for the administration process provided by the Code --- that is, the government not only overlooked clear statutory directives, prohibitions, and

---

[3]    United States Tax Court Rule 13(a).

[4]    26 U.S.C. § 6212(a).

[5]    An assessment is illegal and void if a 90-day letter has not been sent to the taxpayer. *Steiner v. Nelson*, 259 F.2d 853 (7th Cir. 1958); *United States v. Williams*, 161 F. Supp. 158 (E.D.N.Y. 1958).

[6]    This enactment requires that assessments be made within 3 years after the return was filed.

limitations with regard to its revenue powers, but it also clearly undermined taxpayer's statutory rights.

### B. Recovery and Sovereign Immunity

Having said as much, the question remains, however, whether plaintiff can recover. It is one thing to say that the government has acted in excess of its tax collection powers, but it is quite another thing to say that government can therefore be sued. For instance, it has been said "that the right to sue the government is purely statutory, and that the right to recover back taxes wrongfully collected rests upon the same basis." *Gotham Can Co. v. United States,* 37 F.2d 793 (C.Cl. 1930), *cert. den.* 281 U.S. 706 (1930). That is, at issue is the doctrine of sovereign immunity and whether there has been a waiver of immunity.[7]

The Code does provide for refund suits against the government for the recovery of any tax alleged to have been erroneously or illegally assessed or collected. 26 U.S.C § 7422. Such an action, however, is not available in the situation presented here. The filing of a refund suit ensues certain detailed administrative proceedings. Unsurprisingly, the occurrence of certain steps in this administrative process are jurisdictional prerequisites to suit, including: the government's assessment of the tax owed, *Hansen v. United States,* 455 F. Supp. 1367 (W.D.Mo. 1938), and the taxpayer's timely filing of a refund claim with the Tax Office. U.S.C. § 7422(a). In the matter before us, an assessment of taxes owed had not been made by the government and, at the same time, the opportunity to file administratively for a refund did not arise. Given the circumstances of the levy, plaintiff's filing of a refund claim with the Tax Office would have been a meaningless exercise. The remedial provisions of 26 U.S.C. § 7422 are not apposite.

### C. Immunity Waived

Taxation is a subject matter which has been extensively regulated, and in the process of that regulation Congress has come up with an elaborate statutory scheme which attempts to address two competing but fundamental interests: the government's need to raise and

---

[7]     In tort, for example, an action for damages, allegedly arising from the wrongful seizure of property pursuant to a tax levy, would not lie against the government. The government's waiver of immunity under the Government Tort Liability Act, A.S.C.A. §§ 43.1201 et. seq., does not extend to any claims relating to the assessment or collection of any tax. *See* A.S.C.A. § 43.1203(b)(3).

collect taxes on the one hand, and the individual's right to own property free from undue government interference on the other. The Code has accordingly furnished the taxpayer with a remedial process designed not only to afford him with a number of protective measures but opportunities as well for judicial review and, therefore, statutory waiver of sovereign immunity. In the statutory scheme of things, his access to the courts is, as we have seen, a sequel to an administrative process which is as binding on the government as it is on the taxpayer. The government is such an integral part of that statutory scheme that without its envisaged cooperation that whole scheme can be effectively frustrated.[8]

In cases involving the seizure of real property, some courts have been quite willing to find a waiver of sovereign immunity under 28 U.S.C. § 2410(a), which provides that the United States may be named as a party in a civil action to quiet title and to set aside sale. *See, e.g.*, *Aqua Bar & Lounge Inc. v. United States*, 539 F.2d 935 (3d Cir. 1976); *Yanicelli v. Nash*, 354 F. Supp. 143 (D.N.J. 1972).

Yet in other cases, certain courts have, without any mention of § 2410 (or sovereign immunity), simply invalidated certain tax sales which were not undertaken in strict compliance with the requirements of the Code. *Johnson v. Gartlan*, 334 F. Supp. 438 (E.D. Va. 1971), *cert. denied*, 414 U.S. 865 (1973); *Reece v. Scoggins*, 506 F.2d 967 (5th Cir. 1975). The starting premise in these cases is the proposition that tax laws which permit the seizure and sale of property must be strictly construed. This is in recognition of the citizenry's inviolable right to property; it was noted by Chief Justice Marshall in 1821:

> That no individual or public officer can sell, and
> convey a good title to, the land of another, unless
> authorized so to do by express law, is one of those
> self-evident propositions to which the mind assents,
> without hesitation; and that the person invested with

---

[8] Undoubtedly, Congress was cognizant of this possibility when it also waived sovereign immunity in the following circumstances. Generally no suit can be maintained to restrain the assessment or collection of any tax. 26 U.S.C. § 7421(a). However, 26 U.S.C. § 6213(a) provides an exception to that general prohibition by granting the taxpayer the right to sue and enjoin the government from making any levy, seizure or distraint under the authority of purported deficiency assessments where the government has failed to give the 90-day notice of deficiency. *See also Laino v. United States*, 633 F.2d 626 (2nd Cir. 1980).

such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court.

*Thatcher v. Powell*, 19 U.S. (6 Wheat.) 119, 125 (1821). In *Reece v. Scoggins, supra*, the Fifth Circuit went on to suggest that:

> [t]he reason for this notion of the inviolability of private ownership *** [is that the power] of seizure and sale of land is one of the most potent weapons in the government's arsenal. The consequences of seizure and sale are often staggering and irreversible; this action not only deprives a taxpayer of a sometimes significant capital investment but also denies him a source of additional income. Seizure and sale are therefore generally available only as a last resort. In recognition of the Damoclean nature of this ultimate weapon, Congress has imposed precise strictures on the seizure and sale of property to satisfy legitimate tax deficiencies.

*Id.* at 971.

An explanation for jurisdiction in these and similar cases is attempted by the concurring opinion in *Aqua Bar & Lounge Inc. v. United States, supra*, which involved a § 2410 action. The suggestion here made is that the elaborate and detailed seizure and sale provisions of the Code provide an implied waiver of sovereign immunity where it is alleged that the Internal Revenue Service has failed to comply with the Code:

> It would appear axiomatic that whenever Congress directs in an unambiguous, detailed manner prescribed, protective procedures to be taken by a government agency, but fails to provide either sanctions or a method of enforcement in the event its mandate is ignored, a waiver of sovereign immunity necessarily must be inferred in order to enforce the legislative will. If it were otherwise, Congressional mandates *** could be treated not as obligatory but rather as mere recommendations which the Internal Revenue Service could violate negligently or intentionally behind the shield of sovereign immunity.

59

*Id.* at 942.

The logic is compelling. Since Congress has deliberately waived sovereign immunity by providing deficiency hearings and refund suits, can it then be said that the government may perversely benefit by its very own wrongdoing which has, among other things, effectively thwarted taxpayer's access to the courts? Of course not. We note subject matter jurisdiction and conclude that sovereign immunity is not a bar to plaintiff's action here for relief.[9]

### D. Due Process

However, these proceedings do not concern issues of taxation. We are not here concerned with the question of whether or not taxes are owed and payable, nor are we concerned with the merits of the Tax Office's claim of deficiency. Those issues come up properly for judicial review in the context of deficiency proceedings pursuant to 26 U.S.C. § 6212 or refund actions under 26 U.S.C. § 7422. As we have seen, those opportunities for review never arose because of the government's actions. To the contrary, the Court is accordingly confronted with questions of whether plaintiff's property interests were seized in accordance with "due process" of law. Compliance with the deficiency notice procedure satisfies due process requirements. *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 597 (1931). We are here concerned with the question of whether the government complied with the detailed requirements of the law concerning seizure of taxpayer's property. We are here concerned with the question of whether or not the government has, in seeking to enforce the law, followed the enforcement steps detailed by Congress. *Thatcher v. Powell, supra,* For reasons given, the above questions must be answered in the negative.

An order will enter accordingly to enjoin the government from depriving plaintiff of his rights to due process:

The government is hereby enjoined from continuing to deprive plaintiff of his rights under the Code to challenge and contest any and all income tax deficiency as the government may determine as due and payable from plaintiff for income tax years 1981 and 1982.

---

[9]  *See also United States v. Hefner*, 420 F.2d 209 (4th Cir. 1969), for the proposition that where a government agency fails to scrupulously observe its rules and regulations, its actions cannot stand and the courts will strike it down.

In compliance with this injunction, the government is further enjoined from withholding all property it had seized from plaintiff as aforesaid until it has complied with all the requirements of the Code pertaining to distraint and levy.[10]

It is so Ordered.

---

[10] The government's ability to comply with the Code's requirements at this point in time is not of concern to the Court. The Court here focuses on the constitutional requirement that any seizure meet the due process standard formulated in the Code.