DENNIS MELLING, APPELLEE, V. DALE L. MATTLEY AND
ERLYN M. MATTLEY, APPELLANTS, AND RONDA L. MATTLEY
ET AL., APPELLEES.
637 N.W.2d 661

Filed January 8, 2002.   No. A-00-857.

Gene Oglesby, of Oglesby Law Offices, P.C., for appellants.

Dale C. Crandall for appellee Dennis Melling.

HANNON, SIEVERS, and MOORE, Judges.

SIEVERS, Judge.

Dale L. Mattley and Erlyn M. Mattley (the Mattleys) appeal the decision of the district court for Garfield County quieting title to their commercial real estate in Dennis Melling, the tax sale purchaser of the land. The issue is whether the Mattleys received sufficient notice by the Internal Revenue Service (IRS) of the levy, seizure, and sale of their real property for nonpayment of delinquent taxes such that the IRS was able to transfer title to the property to Melling and his wife by a valid director's deed.

## FACTUAL BACKGROUND

In the mid-1950's, the Mattleys acquired the real estate at issue in Burwell, Nebraska, upon which they opened a general store, known as Mattleys. They moved into the house located directly behind the store in the mid-1960's. In the 1980's, the Mattleys had transferred their commercial real estate through various trusts, but retained beneficial ownership. They also began receiving notices from the IRS that they owed delinquent taxes. In 1991, the IRS levied upon and seized the store and the land upon which it was located. The Mattleys protested the seizure in a letter dated March 18, 1991, to the IRS district director. The IRS then proceeded to sell the property. Melling and his wife bought the real estate on April 18, having submitted the highest sealed bid of $8,626.97.

## PROCEDURAL BACKGROUND

After buying the commercial real estate, Melling and his wife received a certificate of sale of seized property from the IRS. Melling and his wife waited for the 180-day redemption period to expire, during which time the Mattleys did not redeem the property, so Melling and his wife requested the deed to the land from the IRS district director. After losing the original director's deed, Melling and his wife had it replaced by a deed dated November 7, 1996, which they filed the next day. After their divorce, Melling's wife transferred her interest in the land to Melling via a quitclaim deed dated February 14, 1997.

Melling's subsequent attempts to sell the real estate were frustrated by his inability to acquire title insurance, apparently due to the attempted transfers of the land by the Mattleys in the 1980's to so-called trusts. Therefore, Melling filed a petition to quiet title on July 20, 1998, with the district court for Garfield County. In his petition, Melling claimed that the Mattleys' various transfers of the real property to trusts, and their letter protesting the seizure of the property, cast a cloud upon his title. He asked the district court to quiet title in the property in him and to permanently enjoin the Mattleys and anyone claiming any interest in the real estate through them from asserting any claims against the property.

The Mattleys cross-petitioned and filed a second amended cross-petition on May 13, 1999, which is the operative filing. The Mattleys alleged that the IRS failed to follow its own procedures by not personally serving them with notice of intent to levy, notice of seizure, and notice of sale as required by the Internal Revenue Code. They asked the district court to find that this failure voided the tax sale and deed and for judgment declaring them fee simple owners of the property to the exclusion of Melling or anyone claiming through him. The Mattleys also sought a judgment awarding them actual damages for the economic loss due to their inability to use the property.

A hearing was held on June 21, 2000. The Mattleys asserted that they were not personally served with notices of levy, seizure, or sale. They further asserted that they did not receive these notices at their store or home and that they only acquired copies under the Freedom of Information Act. See 5 U.S.C. § 552 et seq. (1994 & Supp. V 1999). Dale Mattley testified that he was confronted by a "gang" of people who took physical possession of the property prior to the sale. He further stated that he never saw notices of the sale posted on the store, but that he did see an advertisement about the sale in the local newspaper. Melling entered into evidence exhibit 11, the March 18, 1991, letter from the Mattleys to the IRS district director in which they protested the seizure of their store. Melling testified that he learned of the sale by "[w]ord of mouth" and from notices posted on the store's windows and doors. He introduced into evidence exhibit 14, the certificate of sale of seized property, and exhibit 12, the IRS district

director's deed he received after the mandatory 180-day redemption period.

The district court entered its order on June 28, 2000. The court found that the Mattleys "must have had notice of the levy and seizure when the [IRS] agents took over their property." The court added that they had notice of the seizure of the property as early as March 14, 1991, as well as of their right to administrative review as evidenced by their letter to the IRS of March 18, which was written a month before the sale. The court concluded that the Mattleys must have known of the sale from the newspaper advertisement they saw prior to the sale. The district court also quoted 26 U.S.C. § 6339(b) (1994), which states:

> In the case of the sale of real property pursuant to section 6335—
>
> (1) Deed as evidence
>
> The deed of sale given pursuant to section 6338 shall be prima facie evidence of the facts therein stated; and
>
> (2) Deed as conveyance of title
>
> If the proceedings of the Secretary as set forth have been substantially in accordance with the provisions of law, such deed shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto.

The district court quieted title to the commercial real estate in Melling, and the Mattleys appealed to this court.

## ASSIGNMENTS OF ERROR

The Mattleys' three assignments of error may be reduced to two. The Mattleys assign error to the district court's holding that their actual notice of the levy, seizure, and sale of their property constituted sufficient compliance by the IRS with federal law on such matters so that the director's deed transferring title to Melling was valid. They further assign error to the court's holding that they had actual notice of levy, seizure, and sale before the sale.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Rush Creek Land & Live Stock Co. v. Chain*, 255 Neb. 347, 586 N.W.2d 284 (1998);

*Schram Enters. v. L & H Properties*, 254 Neb. 717, 578 N.W.2d 865 (1998). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Id.*

## ANALYSIS

*Federal Notice Statutes: Levy, Seizure, and Sale of Real Property.*

■ Although this action to quiet title between two Nebraska citizens was tried and is appealed in state courts, the critical issue of whether the Mattleys received notice adequate to legitimize the IRS' tax sale of their commercial property is a question of federal law. Nonetheless, state courts clearly have jurisdiction to decide questions involving title to lands within their borders even though federal law is determinative. See, *Dimondale v Grable*, 240 Mich. App. 553, 618 N.W.2d 23 (2000); *Kelly v. Lunding*, 131 Ill. App. 3d 410, 475 N.E.2d 1093, 86 Ill. Dec. 714 (1985).

Federal statutes provide in 26 U.S.C. § 6330(a)(1) (Supp. V 1999) that "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made." Subsection (a)(2) states:

The notice required under paragraph (1) shall be—

(A) given in person;

(B) left at the dwelling or usual place of business of such person; or

(C) sent by certified or registered mail, return receipt requested, to such person's last known address;

not less than 30 days before the day of the first levy with respect to the amount of the unpaid tax for the taxable period.

The provision addressing notice of seizure provides:

As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property . . . or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address.

> Such notice shall specify the sum demanded and shall contain . . . in the case of real property, a description with reasonable certainty of the property seized.

26 U.S.C. § 6335(a) (1994). Section 6335(b), notice of sale, further requires that "notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made."

The Mattleys argue that the federal government's failure to strictly comply with the notice requirements of §§ 6330 and 6335 invalidates the levy, seizure, and sale of their commercial property. The Mattleys claim that IRS compliance with these statutes is necessary, regardless of whether they had actual notice of the levy, seizure, and sale of the property.

*Plaintiff's Burden of Proof in Quiet Title Action.*

Determining who has the burden of proof in a case such as this is an important part of the analysis. In an action to quiet title, the plaintiff generally has the burden of proof and must recover upon the strength of his or her title. *Schaneman v. Wright*, 238 Neb. 309, 470 N.W.2d 566 (1991); *Vogel v. Bartels*, 1 Neb. App. 1113, 510 N.W.2d 529 (1993). Our review of the record reveals that Melling offered no evidence that the IRS personally served the Mattleys with notice of levy, seizure, or sale of their property. Nor did Melling introduce evidence that the IRS left written notices of these actions at the Mattleys' store or home, a type of service allowed by § 6330(a)(2) and by § 6335(a) and (b) when the seized property is located in the same revenue district as where the federal government seized the property. The lack of such evidence takes us to the statutory presumption.

*Evidence of Notice from Certificate of Sale and Deed of Sale.*

Section 6339(b)(1) provides that in the case of the sale of seized real property pursuant to § 6335, the deed of sale given pursuant to 26 U.S.C. § 6338 (1994) shall be prima facie evidence of the facts therein stated. Section 6338(a) and (b) provides that a purchaser of property sold pursuant to § 6335 receives a certificate of sale, and if the property is real property, the purchaser exchanges the certificate of sale for a deed after the statutory redemption period expires. According to § 6338, the certificate of sale and the deed must detail the real property

purchased, for whose taxes the property was sold, the purchaser's name, and the price paid. Thus, if these facts are included in the certificate of sale and the deed, the deed of sale becomes prima facie evidence of the facts stated therein under § 6339(b)(1). Section 6339(b)(2) then provides:

> If the proceedings . . . have been substantially in accordance with the provisions of law, such deed shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto.

Melling received exhibit 14, the certificate of sale of seized property, from the IRS upon purchasing the Mattleys' property. Exhibit 12 is the IRS district director's deed, which the Mellings received after the statutory redemption period expired. The certificate states that the property was seized due to the Mattleys' nonpayment of delinquent IRS taxes, names the Mellings as the purchasers, lists the sale amount, and describes the property.

The deed states that pursuant to the authority vested in him by § 6330, the IRS district director "did cause levy to be duly executed, and did cause the property hereinafter described to be seized for the nonpayment of delinquent United States Internal Revenue taxes due from Dale L and Erlyn Mattley." Thus, the person for whose taxes the property was sold is named, as required by § 6338, and the deed further states that levy upon the property was duly executed. We quote from the deed:

> AND WHEREAS, the notice of said seizure having been given in accordance with the provisions of Section 6335(a) of the Internal Revenue Code;
>
> AND WHEREAS, the time, place, manner, and condition of sale of said seized property hereinafter described having been duly advertised in accordance with the provisions of Section 6335 of the Internal Revenue Code, and the regulations promulgated thereunder, the same was sold at public sale under sealed bid in accordance with said Section 6335, for the sum of $8,626.97 to the highest bidder therefore, namely [Melling and his wife.]

The purchaser of the property is named and the price paid reported in the deed, as required by § 6338, and the IRS avers that

it complied with the notice of seizure provisions of § 6335(a) and the notice of sale provisions of that section. The deed ends with a proper legal description of the land the Mellings purchased, also as required by § 6338.

Because the requirements for the recitals in the deed from § 6338 are present, the deed provides prima facie evidence of the other facts stated therein as provided by § 6339(b)(1). Of particular significance are the factual assertions of the IRS in the deed that it complied with the statutory notice requirements for levy, seizure, and sale under § 6335. However, the deed is only prima facie evidence of such matters, and in this case, the Mattleys testified that they did not receive the notices of levy, seizure, and sale due them under §§ 6330 and 6335 until they requested the documents, after the sale, from the IRS under the Freedom of Information Act. Melling never adduced any evidence contesting the Mattleys' claim that they had not received their statutory notices.

There is no Nebraska case addressing the effect of such an evidentiary posture in a quiet title action having its genesis in an IRS tax sale. But the issue was decided in *Dimondale v Grable*, 240 Mich. App. 553, 618 N.W.2d 23 (2000). In *Dimondale*, the grantee of a purchaser of land at an IRS tax sale filed a petition to quiet title to the property. The delinquent taxpayer answered that the tax sale was invalid because the IRS failed to comply with the notice requirements of § 6335. The trial court granted summary judgment to the grantee, but upon review, the Michigan Court of Appeals reversed, and remanded for the trial court to enter summary judgment in favor of the delinquent taxpayer. The appellate court recognized that under § 6339(b), a tax deed is valid on its face because the deed is prima facie evidence of the facts stated within it. But while the tax deed contained a statement that the tax sale was conducted in compliance with the statutory notice requirements in *Dimondale*, the delinquent taxpayer rebutted this deed's assertions by showing inadequate notice, a claim which the grantee did not disprove with contrary evidence. Therefore, the court in *Dimondale* held that the statement in the tax deed that the IRS complied with all relevant statutory provisions had no effect on the court's quiet title decision. The Michigan court held that " ' "the burden of showing literal

compliance with statutes governing the sale of land for taxes is upon the claimant upon the tax sale."'" 240 Mich. App. at 568, 618 N.W.2d at 31. The Illinois Court of Appeals has also imposed the burden of proving that the IRS complied with the statutory notice requirements upon the one claiming the land under the director's deed. See *Kelly v. Lunding*, 131 Ill. App. 3d 410, 475 N.E.2d 1093, 86 Ill. Dec. 714 (1985).

In the instant case, Melling failed to controvert the Mattleys' testimony that they did not receive the statutorily required notice of levy, seizure, and sale. Thus, any prima facie effect of the assertions in the deed that the IRS had properly given the required notices to the Mattleys was rebutted. However, despite the foregoing authority, we believe that there is one more analytic step, which is to examine whether the Mattleys received actual notice of levy, seizure, and sale. If the Mattleys received actual notice, we must decide whether such notice is enough to legally validate the tax sale of their real estate.

*Effect of Actual Notice of Seizure and Sale.*

Although there is no evidence in the record showing that the Mattleys had actual notice of levy, the Mattleys cannot claim that they lacked actual notice of seizure and sale of the land where their store was located. We note in passing that compared to the import of seizure and sale, it seems that notice of levy is rather inconsequential—particularly in the instant case where the evidence shows that for a number of years, the IRS was attempting to collect taxes from the Mattleys. In other words, the fact that the IRS was after them would have been no shock to the Mattleys, and therefore, we do not think the matter of notice of levy is particularly meaningful in the analysis. Dale Mattley's testimony and the Mattleys' letter to the IRS district director establish that they were present at the seizure of their store. Further, although there was conflicting evidence of whether sale notices were posted at their store, Dale Mattley admitted that he learned of the sale by advertisements placed in the local newspaper. Thus, we find that the Mattleys had actual notice. Accordingly, the issue becomes whether the Mattleys' actual notice of seizure and sale of their property is sufficient to validate the tax sale to Melling. The authority on this point is in conflict.

■ Generally, strict compliance with notice requirements governing seizure and sale of property for delinquent federal income taxes is required. See, *Goodwin v. U.S.*, 935 F.2d 1061 (9th Cir. 1991); *Reece v. Scoggins*, 506 F.2d 967 (5th Cir. 1975) (literal compliance with statute requiring that taxpayer be given notice of sale of land for delinquent income taxes is required before government's sale of land can stand). See, also, *Johnson v. Gartlan*, 470 F.2d 1104 (4th Cir. 1973). Despite evidence that the taxpayer had actual notice, the Michigan Court of Appeals in *Dimondale v Grable*, 240 Mich. App. 553, 618 N.W.2d 23 (2000), found that the failure of the IRS to provide proper statutory notice could not be excused and that the tax deed was invalid. The final result in *Dimondale* was that title was quieted in the delinquent taxpayer and that the grantee from the tax sale lost the property. Compare *Kelly v. Lunding, supra* (substantial compliance with notice of seizure requirements was sufficient).

There are federal cases finding the landowner's actual notice of the tax sale sufficient when the delinquent taxpayer had received ample opportunity to attend the sale of the seized property. *Van Skiver v. U.S.*, 751 F. Supp. 1522 (D. Kan. 1990); *Howard v. Adle*, 538 F. Supp. 504 (E.D. Mich. 1982). However, in *Van Skiver*, the delinquent taxpayers had been personally served with notice of seizure in compliance with § 6335(a). And while the IRS did not attempt personal service of the notice of sale, as required by § 6335(b), the IRS did provide notice by certified mail, and the return receipt bore the taxpayer's signature. Moreover, when the sale was rescheduled because no buyers appeared at the first sale, the IRS again sent notice of the second sale to the taxpayers. The court's analysis in *Van Skiver* is grounded in equity: the court first noting that a quiet title action is an equitable action, that the taxpayers waited over 2 years after the sale before bringing the quiet title action, and that the IRS' noncompliance with statutory notice provisions was "technical," plus that there was no claim by the taxpayers that they did not have actual knowledge of the seizure and sale. *Id.* at 1526. Finally, the *Van Skiver* court noted that the purpose of the notice statute, § 6335(b), was satisfied. *Reece v. Scoggins, supra*, represents the other side of the coin.

In *Reece*, the Fifth Circuit Court of Appeals said that because the taxpayer never received statutory notice of the tax sale, the

sale was void ab initio. Adopting a rule of strict compliance with the notice statutes, the court contrasted the inviolability of private ownership of property with the fact that seizure and sale was the most potent weapon in the "government's tax collection arsenal." 506 F.2d at 971. The court described seizure and sale as a weapon of a "Damoclean nature" which can deprive a taxpayer of a sometimes significant capital investment plus a source of income. *Id.* The *Reece* court found that in such circumstances, given that the language of § 6335 was clear and mandatory, strict compliance would be required. The court found that the record showed that the IRS "failed completely to comply with the notice provisions of the Code." 506 F.2d at 971.

*Reece* was distinguished in *Howard v. Adle, supra*, upon the ground that the *Reece* court moved from finding the sale voidable to holding the sale void, without any consideration of whether the taxpayer should have equitable relief under the applicable state law. And in finding for the tax sale purchasers, the court in *Howard* noted that although there were defects in the notice given the taxpayers, there was no claim that they were thereby denied the opportunity to be present at the sale. Central to the court's reasoning in *Howard* was recognition that such cases are quiet title actions. The court said that under Michigan state law where a serious defect occurs in a tax sale, it may be attacked by the owner, providing he acts promptly and does equity. *Id.*, citing *Detroit Trust Co. v. Lieberwitz*, 275 Mich. 429, 266 N.W. 406 (1936).

*Howard, supra*, also distinguishes upon grounds of equity another strict compliance case, *Aqua Bar & Lounge, Inc. v. United States*, 438 F. Supp. 655 (E.D. Pa. 1977). In *Aqua Bar & Lounge, Inc.*, a Pennsylvania federal district court reasoned that the government knew the taxpayer's address and should have delivered the required notices to him at that address, concluding that the possibility that he may have received actual notice by the mail was "irrelevant." *Id.* at 657. Additionally, the court in *Aqua Bar & Lounge, Inc.*, quickly brushed aside in a footnote any notion that the good faith of the buyer should prevent the sale from being voided. In another strict compliance case involving an automobile seizure, *Kulawy v. U.S.*, 917 F.2d 729, 735 (2d Cir. 1990), the court said, "A stickler for enforcing the statutory notice it is

entitled to receive, the government should be no less punctilious with respect to the statutory notice it is required to give."

*Resolution: Strict Compliance or Weighing of Equities.*

How a court resolves the obvious conflict between these conflicting lines of authority perhaps depends upon the view taken of "the government." One view is that the government acts through its employees, people just trying to do their jobs, and that government employees are no more infallible than other people. Thus, the mistakes and lapses, and the effect thereof, of government employees, including those working for the IRS, must be judged in the context of the real effect on the citizen. A contrary view is that Congress has designed a system which allows the government to seize and sell a citizen's property without the protection of the judicial system, an obviously powerful weapon subject to potential abuse, and that as a result before such drastic measures are taken, the government must strictly "follow the rules." And if the government "cuts corners" or makes mistakes, its sale of the citizen's property is void, not just voidable.

While both viewpoints have their attractions, and there are undoubtedly other ways of characterizing the philosophies which drive the split in authority, we find that because the underlying action is an equitable one brought by a citizen who has relied on an apparently lawful sale conducted by the government, we must look to the equities. In doing so, we bear in mind that the competing parties here are both citizens. Adopting a bright-line rule of "strict compliance" or the sale is void—without regard to when the claim of noncompliance is raised—tends to favor one who was in violation of the law to begin with by not paying internal revenue taxes over the innocent citizen purchaser who had relied upon the government to conduct a lawful sale. Such a result causes discomfort unless the evidence shows that the delinquent taxpayer was actually disadvantaged by the government's lapses. Consequently, we reject the rule of strict compliance and analyze the equities of the situation as revealed by the evidence.

This record is lacking in proof that the Mattleys received personal service, service at their home or business, or service by certified or registered mail of notice of levy under § 6330. The

record does suggest that the Mattleys received notice of seizure or notice of sale under § 6335(a) and (b). There was no evidence they received personal service, service at their home or business (both located within the internal revenue district where the seizure was made), or notice mailed to their home. Upon our de novo review of this record, we believe that this lack of evidence stems from a failure of the purchaser, Melling, to appreciate that the burden of proof fell to him to adduce such evidence once the Mattleys denied receiving the statutory notices, rather than because the IRS actually failed to give such notice. We say this because Dale Mattley's testimony that he eventually received the notices under the Freedom of Information Act clearly suggests to us the permissible inference that the government did not act in total disregard of its duty to give statutory notices.

The record, as stated earlier herein, shows that the Mattleys were personally aware of the seizure of their property, of the sale of their property, and of when it was to be sold. Thus, the purpose of the notice statutes was satisfied, and the Mattleys had the knowledge necessary to bid on their property if they were so inclined and had the means to do so. Moreover, the situation is one which they created by their failure to pay taxes as all who earn money are required to do. The property was sold to an innocent purchaser, Melling, for value, who held the property for nearly 9 years before he sought to clean up the title from clouds created by the Mattleys' maneuvers in trying to transfer it to trusts once the IRS began actively seeking payment of the unpaid taxes. It was only when the innocent purchaser sought to quiet title that the Mattleys collaterally attacked the IRS sale, after sitting on their ability to potentially void the sale for years and years. Obviously, judicial approval of such tactics would place the certainty of real estate titles in real jeopardy. In other words, if the taxpayer who has at the very least received actual notice of the seizure and sale has a claim upon which to void the sale, we will require that such claim be asserted in a reasonably timely fashion. This the Mattleys did not do.

Thus, while we agree that the IRS should comply with the notice statutes when it seizes and sells a citizen's property, we hold that a failure to provide statutory notice makes the sale only voidable. And, whether such sale is to be voided requires

an examination of the equities of the situation because an action to quiet title is fundamentally an equitable action. Here, the Mattleys had actual notice of seizure and sale, and we can find no equities in the record which would require that we void the sale to an innocent purchaser. Thus, we affirm the district court's decision quieting title to the property in question in Melling.

AFFIRMED.