[No. 12951-9-III.   Division Three.   August 8, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. CHERYL L. JONES, *Appellant*.

*Dennis C. Cronin* and *Maxey Law Offices, P.S.*; and *Nancy L. Talner*, for appellant.

*Gary A. Riesen, Prosecuting Attorney*, and *Alicia H. Nakata, Deputy*, for respondent.

SCHULTHEIS, J. — Cheryl Jones appeals her conviction for indecent liberties. At a bench trial, Mrs. Jones defended on the basis of diminished capacity. She presented expert testimony she suffers from multiple personality disorder (MPD) and was not conscious of the actions of an alter personality who performed the criminal act. She contends the trial court erred when it determined she acted knowingly because the alter personality was aware of facts described by the statute defining the offense of indecent liberties. RCW 9A.08.010(1)(b); 9A.44.100(1)(b).[1] We affirm.

Mrs. Jones's husband, David, testified for the prosecu-

---

[1] By amended information filed June 18, 1992, the State charged Mrs. Jones with first degree statutory rape and indecent liberties, and alternatively with first degree rape of a child and first degree child molestation, all committed between 1987 and 1990. The trial court only convicted her of indecent liberties.

tion. He stated he and his wife had touched their three-year-old foster daughter in the vaginal area. He also described multiple personalities he had seen Mrs. Jones display. During the period in which the indecent liberties occurred, Mr. Jones estimated his wife's personality was "out" only about 30 to 40 percent of the time. He stated "Cat's" personality was involved in the indecent liberties.

Defense psychiatrist Robert Wetzler testified Mrs. Jones suffers from MPD. MPD is defined in the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS. Citing the third revised edition of the manual as authority, Dr. Wetzler described the condition as one in which the mental functions are separated or dissociated from the main stream of consciousness. As a consequence, these functions are lost to volitional control. MPD occurs when a person suffers a severe trauma that she cannot handle and develops another personality to deal with the trauma. In Mrs. Jones's case, Dr. Wetzler believes prior sexual abuse she suffered as a child brought on the MPD. Cheryl is the main personality, and is not aware of, nor can she control, what the other personalities do. He therefore concluded her mental state at the time of the indecent liberties was diminished and she could not have acted knowingly.

Dr. Verne Cressey is the psychiatrist who examined Mrs. Jones for the State. He disagreed with Dr. Wetzler's diagnosis. He pointed out that Mrs. Jones said she had experienced no time lapses in the past five years. Time lapses are characteristic of MPD because the core personality does not remember what happened while an alter personality is in control. Dr. Cressey believed the evidence of prior sexual abuse was limited to one instance in which an uncle had attempted to fondle Mrs. Jones.

Mrs. Jones's therapist brought out Mrs. Jones's various personalities for Dr. Cressey to observe. Mrs. Jones displayed them in quick succession and did not change position or change her voice, except slightly. Dr. Cressey stated these facts were inconsistent with MPD. He also

believed the fact the alleged personalities had similar likes and dislikes indicated something other than MPD. Dr. Cressey diagnosed Mrs. Jones as depressed, and concluded she had full capacity to commit the crime of indecent liberties.

The trial court found Mrs. Jones has a form of MPD and at times acts in personalities other than her core personality. The personalities are distinct and have the ability to act knowingly. The personalities sometimes know what happens during the emergence of the various personalities and sometimes do not. In March 1988, the personality named "Cat" or "Catherine" knowingly touched her three-year-old foster daughter in the vaginal area for the purpose of sexual gratification. The court found the State had not shown that Mrs. Jones knew on the particular occasion at issue what "Cat" or "Catherine" was doing. However, the trial court concluded Mrs. Jones's MPD did not relieve her from criminal responsibility for her acts because the "personality known as 'Cat' or 'Catherine' was able to know, and did know, what she was doing when the events were occurring." Neither Mrs. Jones nor the State has assigned error to the trial court's findings.

Did the trial court err when it held Mrs. Jones acted knowingly because her alter personality acted knowingly, even though it also found the State did not prove she knew what her alter personality was doing when it committed the acts in question?

■ In Washington, the trier of fact properly considers diminished capacity "whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required *level of culpability* to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983) (emphasis added). The four levels of culpability defined in RCW 9A.08.010 are intent, knowledge, recklessness, and criminal negligence. Mrs. Jones asserts she is not guilty of indecent lib-

erties because a requisite element of that offense is that the defendant act with knowledge. RCW 9A.44.100(1)(b).[2] I.e., Mrs. Jones had to be aware she was causing her foster daughter to have sexual contact with her. *See* RCW 9A.08.010(1)(b).[3]

■ Mrs. Jones's argument fails. She claims she has *no* responsibility with respect to the alter personality's actions. She can no more control Cat's behavior than she can control the behavior of another individual. The foregoing describes a total absence of capacity, not diminished capacity.[4]

Mrs. Jones does not cite any authority that recognizes a diminished capacity defense in these circumstances, nor did we find any. The case she relies upon, *United States v. Denny-Shaffer*, 2 F.3d 999 (10th Cir. 1993), concerned an insanity defense. It held the evidence was sufficient for the jury to find the defendant *not guilty by reason of insanity* because her dominant personality "was neither aware of nor in control of the commission of the offense and thus was unable to appreciate the nature and quality or wrongfulness of the conduct which the alter . . . carried out." *Id.* at 1013.

■ *Denny-Shaffer* is not controlling. Moreover, it is directly contrary to our Supreme Court's opinion in *State v. Wheaton*, 121 Wn.2d 347, 850 P.2d 507 (1993). In *Wheaton*, the defense psychologist testified that two ap-

---

[2]A person commits indecent liberties, as defined in RCW 9A.44.100(1), if he "knowingly causes another . . . to have sexual contact with [him or her] . . .: (b) When the other person is incapable of consent . . . ."

[3]"A person . . . acts knowingly . . . when: (i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense;" RCW 9A.08.010(1)(b).

[4]An alter personality might possess a diminished capacity to commit an offense. For example, in *State v. Moore*, 113 N.J. 239, 550 A.2d 117, 141 (1988), the court reversed the defendant's conviction for failure to instruct the jury on diminished capacity. It relied upon expert testimony the alter personality who performed the criminal act was "psychotic, delusional, and . . . exhibited traits of paranoid schizophrenia." *Moore*, 550 A.2d at 141. Mrs. Jones's argument is different. It concerns the mental state of her core personality, not the alter personality in control at the time of the indecent liberties.

proaches exist to determine accountability in these situations. He favored the global approach, although he admitted it is not scientifically accepted. That approach, which *Denny-Shaffer* relied upon, finds insanity present whenever the core personality is not in control or co-conscious. *Id.* at 353, 354. The specific alter personality approach looks to see whether the mental state of the alter personality in control at the time of the offense lacks criminal capacity under the *M'Naghten*[5] test. *Id.* at 353.

The court in *Wheaton* assumed the defendant suffered from MPD and the core personality was unaware of the alter personality's conduct. *Id.* at 351.[6] The court held that the medical opinions offered in the trial court did not provide a sound basis "to address the legal sanity/insanity inquiry, and specifically . . . to determine how to assess persons diagnosed with multiple personalities for insanity." *Id.* at 352. The court concluded the "record simply does not contain enough soundly based information about MPD, its nature and ramifications, . . . to announce a rule of law for determining how to assess the legal sanity or insanity of a defendant suffering from MPD." *Id.* at 357. It therefore affirmed the defendant's conviction. *Id.* at 365.

The expert testimony here has the same shortcomings as in *Wheaton.* Dr. Wetzler's description of MPD and his opinion as to Mrs. Jones's ability to act knowingly, are no more helpful than the testimony offered by the defense in *Wheaton.* Accordingly, we affirm Mrs. Jones's conviction because the record she made at the trial court level is inadequate to assess the effect of Mrs. Jones's MPD on her capacity to commit indecent liberties.

Affirmed.

SWEENEY, C.J., and MUNSON, J., concur.

Review denied at 131 Wn.2d 1014 (1997).

---

[5]*See M'Naghten's Case,* 10 Clark & Fin. 200, 8 Eng. Rep. 718 (H.L. 1843).

[6]*Wheaton,* 121 Wn.2d at 348 n.1, cited the American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 300.14, at 269, 272 (3d rev. ed. 1987) for symptoms of the disorder.