**Josie PIA, Trustee**

v.

**The UNITED STATES.**

**No. 572–82C.**

United States Claims Court.

Jan. 14, 1985.

William Steven Paleos, Washington, D.C., attorney of record, for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Stephen Ash, Philadelphia, Pa., of counsel.

### OPINION

MEROW, Judge:

This case comes before the court on cross-motions for summary judgment. Josie C. Pia, plaintiff, as trustee for Jack Massengale, seeks recovery from actions taken by the United States, Internal Revenue Service (IRS).

### *Facts*

The dispute arises out of an April 22, 1981 tax sale of real property in which the defendant sold the residence of a delinquent taxpayer at a public auction to plaintiff for $28,000. Prior to the sale the IRS issued a formal notice of public auction sale which read, in pertinent part:

Title Offered:

Only the right, title, and interest of James & Mary J. Rynes in and to the property will be offered for sale. If requested, the Internal Revenue Service will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold. * * *

In addition, on February 19 and March 6, 1981 the IRS advertised the sale in the Washington Star. The ad stated, in pertinent part:

TITLE OFFERED:

Only the right, title, and interest of James & Mary J. Rynes in and to the property will be offered for sale. If requested, the Internal Revenue Service will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold.

NATURE OF TITLE:

The right, title, and interest of the taxpayer in and to the property is offered for sale subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States. All property is offered for sale "where is" and "as is". and without recourse against the United States. No guaranty or warranty, express or implied, is made as to the validity of the title. * * * No claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any expressed or implied representation.

At the auction, prior to the sale, IRS revenue officer Paul J. Eubank read aloud an IRS disclaimer, "Opening Statement for Auction Sale," which included the above-quoted statements. Pursuant to IRS standard procedures, Mr. Eubank also distributed to all bidders a copy of the notice of public auction sale and a copy of the notice of encumbrances against property offered for sale. The latter notice showed no encumbrances on the property, but also stated:

The Internal Revenue Service does not in any way warrant the correctness or completeness of the above information, and provides the information solely to help prospective bidders determine the value of the interest being sold. The above taxpayer's interest may be affected by claims not shown here. Bidders

should, therefore, verify for themselves the validity, priority and amount of encumbrances against the property offered for sale.

Prior to the sale Mr. Massengale called and spoke with Mr. Eubank about the property. The contents of the telephone conversation are disputed. Plaintiff contends defendant stated "There were no superior encumbrances on the subject property and that the property was in excellent condition." Defendant claims Mr. Massengale was informed only that a search had been made and no prior encumbrances were found.

The property was sold to plaintiff, Josie Pia, as trustee for Mr. Massengale, at the auction. Although the deed and certificate of sale were to be issued in Pia's name, Mr. Massengale actually paid for the property. After the tax sale it became known that there was an outstanding encumbrance on the property. The property was mortgaged to Home Federal Savings & Loan Association (Home Federal). In addition, a notice to this effect was in the IRS files in the form of a 1978 Home Federal notice of the mortgage to the IRS. However, it is undisputed that revenue officer Eubank had no actual knowledge of the mortgage. After the auction Home Federal foreclosed on the property. Plaintiff did not receive notice of the action prior to the foreclosure.

The events following the IRS tax sale and the explanation why plaintiff was not notified of Home Federal's foreclosure are disputed. On April 22, 1981 defendant claims it issued plaintiff a certificate of sale for the property. The IRS could not, however, issue a deed until after the taxpayer's 120 day redemption period expired on August 20, 1981 and the taxpayer failed to redeem the property. Defendant further claims that on September 2, 1981 it issued a quitclaim deed to Josie C. Pia, trustee, granting her "all of the taxpayer's right, title, and interest in the property." During September and October 1981 the IRS made efforts to contact Ms. Pia in order to transmit the deed. On December 4, 1981 Pia sent a notarized letter to IRS

stating that on April 22, 1981 IRS had provided her a certificate of sale for the property, but that she had been unable to locate it, and she requested that the IRS forward the deed to her. Plaintiff maintains that she sent the letter in response to defendant's request but that she, in fact, had not received a certificate of sale. On December 23, 1981 after receipt of the letter, defendant transmitted the deed to plaintiff. According to plaintiff, Pia attempted to record the deed but was unable to do so because the deed was a copy. On June 16 plaintiff informed defendant by notarized statement that she had lost the deed. A second deed was issued plaintiff on June 17, 1982. Also, on June 17, 1982, after Home Federal had sold the property, plaintiff wrote defendant claiming that IRS failed to timely deliver the deed and that the property had been sold without notice to plaintiff. Plaintiff demanded a $28,000 refund. On July 8, 1982 the IRS refused plaintiff's refund demand.

Plaintiff filed suit in this court seeking a full refund, interest, attorney's fees and consequential damages. Plaintiff alleges that defendant violated its rules in that it represented the property was free of all liens when it knew or should have known this to be false; that defendant failed to timely deliver a deed; that this resulted in Home Federal's failure to notify plaintiff of the foreclosure action; and that the tax sale was unlawful because of the circumstances involving the decision to sell the property to collect the taxes.

Defendant maintains that the circumstances surrounding the decision to conduct the initial tax sale were proper and that plaintiff has no standing to challenge defendant's action in this regard; that the title disclaimers and the quitclaim deed defeat plaintiff's misrepresentation claim; and that plaintiff's negligence in losing the certificate of sale and failing to secure and record the deed was the cause of plaintiff's claimed injury.

Cross-motions for summary judgment have been filed. For the reasons stated below, it is concluded that defendant's mo-

tion for summary judgment on the issues of standing and misrepresentation is granted. Plaintiff's motion on these claims is denied. Both motions are denied on the issue of timely delivery of the deed.

## Discussion

■ Defendant is correct in asserting that plaintiff has no standing to contest defendant's decision to conduct the tax sale. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Baskett v. United States*, 2 Cl.Ct. 356, 362–63 (1983). The proper party to challenge this action was the taxpayer(s) who originally owned the property.

■ Plaintiff's second allegation is that defendant is liable because, as a part of the sale transaction, it stated that there were no outstanding liens on the property. It has been established that notice of the Home Federal mortgage was communicated to defendant in 1978. However, Mr. Eubank, the revenue agent in charge of the 1981 tax sale, had no actual knowledge of the lien. There can be no valid allegations that the revenue agent acted in bad faith since he had no actual knowledge of the lien. Plaintiff argues that knowledge of the lien must be imputed to the United States in this transaction such that nondisclosure would constitute a breach of contract. *J.A. Jones Constr. Co. v. United States*, 182 Ct.Cl. 615, 390 F.2d 886 (1968). Plaintiff further argues this situation is similar to instances in government contracts in which the government wrongfully failed to disclose information. *See Hardeman-Monier-Hutcherson v. United States*, 198 Ct.Cl. 472, 458 F.2d 1364 (1972); *J.A. Jones Constr. Co. v. United States*, 182 Ct.Cl. 615, 390 F.2d 886 (1968); *Helene Curtis Industries, Inc. v. United States*, 160 Ct.Cl. 437, 312 F.2d 774 (1963). In the cited cases the government was liable for breach of contract because it failed to disclose information, held to be in its possession, which the contractor could not obtain elsewhere. In this case, knowledge of the outstanding lien was not available only to the government. Plaintiff could have discovered the existence of the Home Federal mortgage had the records of the District of Columbia recorder of deeds been checked. *See H.N. Bailey & Associates v. United States*, 196 Ct.Cl. 166, 449 F.2d 376 (1971).

■ Plaintiff contends that the conversation with Mr. Eubank concerning the status of the property misled plaintiff in that it discouraged an independent title investigation. Although the precise conversation is disputed, even if the court were to accept plaintiff's version, plaintiff's argument would fail. The transaction required, and defendant conveyed, a quitclaim deed. A quitclaim deed does not provide warranties. *See* Tiffany, *Real Property* § 959 (3rd ed. 1975). In addition, the sale was subject to several written disclaimers. In the notice of encumbrance of property offered for sale which was distributed and read before the auction, the IRS advised bidders "to verify for themselves" the nature of the title. The disclaimer also stated the property was offered " 'where is' and 'as is' and without recourse to the United States." When the government sells property with such express disclaimers, the risk is on the purchaser. *Varkell v. United States*, 167 Ct.Cl. 522, 334 F.2d 653 (1964); *American Sanitary Rag Co. v. United States*, 142 Ct.Cl. 293, 161 F.Supp. 414 (1958).

■ In addition, the revenue agent had no authority to alter the conditions of the sale. As this court has stated:

The doctrine found in agency law of apparent authority does not apply to the government. [*Federal Crop Insurance v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).] Moreover, plaintiff has the burden of showing that the officials who made the alleged agreement * * * had the authority to commit the Government. *Jascourt v. United States*, 207 Ct.Cl. 955, 521 F.2d 1406, *cert. denied*, 423 U.S. 1032 [96 S.Ct. 562, 46 L.Ed.2d 405] * * * (1975).

*Lehner v. United States*, 1 Cl.Ct. 408, 415 (1983).

There is no showing that Mr. Eubank had the authority to alter the express terms of the contract. Indeed, in its brief, plaintiff argues the IRS officer violated IRS regulations by making the statements concerning the title.

■ Plaintiff's final claim of breach of contract, based upon defendant's failure to timely deliver the deed, cannot be resolved at this time. The circumstances surrounding the delivery of the deed and any relating damage claims are disputed by the parties. Since material facts are disputed, summary judgment on this aspect of the litigation is inappropriate. *Rapp v. United States*, 2 Cl.Ct. 694 (1983); *Lomas & Nettleton Co. v. United States*, 1 Cl.Ct. 641 (1982). It is unclear what the legal consequences would be were it determined that the deed was not timely delivered. This conceivably could constitute a breach of contract. *Cf. Freedman v. United States*, 162 Ct.Cl. 390, 320 F.2d 359 (1963).

### Conclusion

For the reasons stated above, it is OR-DERED:

(1) Defendant's motion for summary judgment is granted in part and denied in part;

(2) Upon conclusion of the proceedings, judgment shall be entered dismissing that part of plaintiff's claim premised upon any invalidity of the IRS auction sale and the existence of an unlisted encumbrance;

(3) Plaintiff's motion for summary judgment is denied;

(4) Counsel shall submit brief pretrial statements limited to the remaining issue of the deed delivery claims, including the damages, if any, claimed to relate thereto;

(5) The statements submitted pursuant to (4) shall incorporate the information required by the separate Rule 16 order entered this date.