Horace MARTIN, Plaintiff,

v.

The UNITED STATES, Defendant.

Cong.Ref. No. 94–1038X.

United States Court of Federal Claims.

Dec. 23, 1996.

Daniel J. MacDonald, Myrtle Beach, SC, for plaintiff.

Elizabeth A. Rinaldo, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and Jeanne E. Davidson, of the U.S. Department of Justice, for defendant.

## *REPORT OF THE HEARING OFFICER*

ROBINSON, Hearing Officer:

This case, originally filed as case No. 213–89C, is before the court pursuant to S.Res. 136, which refers S. 1325 entitled "A Bill for the Relief of Horace Martin" on cross-motions for summary judgment. Both parties request summary judgment pursuant to Rule 56 of the Rules of the U.S. Court of Federal Claims ("RCFC"). The United States moved for summary judgment on November 7, 1995, and plaintiff filed a cross-motion for summary judgment and a memorandum in opposition to defendant's motion on January 11, 1996. Oral arguments were heard on November 8, 1996. For the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

### *Background*

This congressional reference case concerns a private bill for the relief of plaintiff, Horace Martin, who seeks an order requiring the United States to refund $56,500 to him. The bill states in part:

The Chief Judge shall proceed with the [congressional reference] in accordance with the provisions of sections 1492 and 2509 of Title 28, United States Code, and report back to the Senate, at the earliest practicable date, giving such finding of fact and conclusions that are sufficient to inform Congress of the amount, if any, legally or equitably due from the United States to the claimant.

S. 1325, 103d Cong., 1st Sess. § 1 (1993).

In October 1986, the Internal Revenue Service ("I.R.S.") seized approximately 63.8 acres of property located in Horry County, South Carolina, owned by Todd's Mobile Home Corporation ("TMHC" or "taxpayer") to recover unpaid federal taxes. The I.R.S. announced a sealed bid sale of the property pursuant to 26 U.S.C. § 6335. The Notice of Sealed Bid Sale offered the property "as is" with no recourse against the United States and subject to any prior valid mortgages, encumbrances or liens that were superior to the lien of the United States. *I.R.S. Notice of Sealed Bid Sale*, Df.'s Exh. ("DX") 4.

In the course of his duties in the Tucson, AZ, Collections division, I.R.S. Officer Ronnell Gary performed title examinations of property and encumbrances offered for sale. After completing a title search and the accompanying Notice of Encumbrance Against or Interest in Property Offered for Sale, I.R.S. Form 2434–B, Mr. Gary concluded that there were no encumbrances against or interests in the property at issue superior to the lien of the United States. This notice form, which was made available to plaintiff prior to the sealed bid sale, included a waiver, which expressly stated that the "I.R.S. does not warrant the correctness or completeness of the above information, and provides the information solely to help the prospective bidders determine value of the interest being sold. Bidders should, therefore, verify for themselves the validity, priority, and amount of encumbrances against the property offered for sale." *Gary Decl.*, Exh. A.

Plaintiff subsequently submitted a bid for $56,500 and won the right to purchase defendant's interest as a successful bidder. The bid document, signed by plaintiff, echoed the quitclaim provisions of the Notice of Sealed Bid Sale and stated *inter alia* that the interest being sold by defendant remained subject to any and all valid, pre-existing debtor-creditor liabilities.[1] The I.R.S. awarded plaintiff the right to purchase the government's interest in the property. Plaintiff tendered the balance due and received a Certificate of Sale

---

1. More precisely, the Notice of Sealed Bid Sale provided:

   Only the right, title, and interest of the delinquent taxpayer in and to the property is offered for sale, and such interest is offered subject to any prior valid outstanding mortgages, encumbrances or other liens in favor of third-parties against the delinquent taxpayer and which are superior to the lien of the United States. All property is offered for sale "as is" and "where

   is" and without recourse against the United States. No guaranty or warranty, expressed or implied is made as to the validity of the title, quality, quantity, weight, size, or condition of any of the property, or its fitness for any use or purpose. *No claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any express or implied representation.* (Emphasis added.)

of Seized Property ("Certificate of Sale") on November 14, 1986, but this Certificate of Sale was not recorded in the Horry County Clerk's Office. To obtain the deed for this property, plaintiff was to exchange the Certificate of Sale for the deed after the expiration of a 180–day statutory redemption period allowed to the owner, TMHC. TMHC, however, has failed to exercise this right of redemption. To date, plaintiff has still not exchanged the Certificate of Sale for the deed.

At the time of his receipt of the Certificate of Sale, plaintiff was not aware that Peoples Federal Savings & Loan Association ("People's S & L") held a first lien mortgage on the property. On December 31, 1986, Peoples S & L foreclosed upon the property to collect approximately $177,124.42 in mortgage balances then due. Then on January 27, 1987, the I.R.S., without notice to plaintiff, filed a certificate of release of federal tax lien. During the redemption period and prior to the release of the federal liens, several judgment liens were filed against the subject property:

| | |
|---|---|
| Conway Painters | December 19, 1986 |
| Herbert & Barbara Baker | December 19, 1986 |
| South Carolina Tax Commission | January 5, 1987 |
| South Carolina Tax Commission | March 2, 1987 |
| South Carolina Employment Commission | March 18, 1987 |
| South Carolina Tax Commission | March 26, 1987 |
| People's Federal S & L Association | April 22, 1987 |
| South Carolina Tax Commission | March 25, 1988. |

People's S & L held a promissory note for $21,000 from TMHC executed in November 4, 1977, which mortgaged part of TMHC's real property and was later determined by the Court of Common Pleas to be a valid record first mortgage lien. This loan went into default, and that court found that $18,926 remained due with 9% interest until paid. Additionally, on September 10, 1985, People's S & L loaned TMHC $150,000 evidenced by a second promissory note. Approximately 60 acres of TMHC's property secured this loan under a mortgage that was considered a valid record first mortgage lien. This loan also went into default. The court found that $178,405 plus interest at 12% interest re-

mained due until paid. Plaintiff now seeks recovery on legal and equitable grounds in the amount of $56,500, because plaintiff contends its certificate of sale is worthless since the property at issue bore an encumbrance superior to the I.R.S.' lien for an amount in excess of its claimed amount.

### Contentions of the Parties

Plaintiff alleges that he was misled by the I.R.S.' written notice of title search and oral representations made by Revenue Officer Gary. Plaintiff argues that state law binds federal courts in passing upon the effect of a state's registration statutes and the failure to comply therewith. State law, contends plaintiff, governs the validity of the execution of a deed stemming from a federal tax sale. Plaintiff maintains that under the South Carolina Code all liens must be filed in the Office of the Register of Conveyances to establish priority over subsequent creditors. The priority of purchasers is determined at the time of filing. Plaintiff concedes that federal statutes may govern the seizure procedures but argues that they do not govern transfer procedures. Therefore, plaintiff argues, South Carolina law governs the effect of plaintiff's filing of the various documents associated with the sale of TMHC's property and that he could not have protected his interest by recording his certificate as that document does not meet the filing requirements of the South Carolina Code.

Plaintiff argues that defendant established its priority by filing the certificate of liens and that the deed not yet delivered to plaintiff would give title to plaintiff, relate back, and grant the same interest held by the United States when the lien was filed. The effect of defendant releasing its liens during the redemption period, i.e., prior to awarding a deed to plaintiff, was to extinguish priority purchased by plaintiff over junior lienholders, the precise benefit for which plaintiff gave consideration. Plaintiff contends that under 26 U.S.C. § 6339, defendant must deliver a deed to the successful bidder conveying all right, title, and interest the delinquent tax-payer had in the property at the time the lien attached. Plaintiff contends this re-

quirement is also incorporated in the Certificate of Sale, the Sealed Bid form, and the Sealed Bid for Purchase of Seized Property form. With the release of its liens, the United States lost its priority and can no longer deliver the property as required by the code. Plaintiff contends that defendant was not required to release its notice of federal lien upon payment by plaintiff. Rather, the delinquent taxpayer's liability is not satisfied until the redemption period expires. Therefore, plaintiff asserts that defendant breached its contract with plaintiff and, in the alternative, argues for rescission of contract based upon mutual mistake since both parties mistakenly believed there were no superior liens on the property. Plaintiff also admits that he did not read the Notice of Sealed Bill Sale carefully and seeks recovery notwithstanding.

Finally, plaintiff maintains that even if his own legal arguments are unavailing, plaintiff should nonetheless prevail on equitable bases. Plaintiff maintains that defendant negligently misled him as to the value of TMHC's interest in the land acquired at the I.R.S. tax sale and that this misrepresentation caused plaintiff's damages.

Defendant counters that plaintiff's claim must fail because, under the regulations governing the transaction, the I.R.S. is limited to providing a quitclaim deed that carries no warranties, as clearly evidenced by the express disclaimers provided to plaintiff by the I.R.S. warning that the property would be conveyed "as is" without warranty.[2] Defendant contends that all encumbrances on the subject property were a matter of public record, and, therefore, plaintiff is charged with constructive knowledge of all information in the land records, including prior liens, concerning the property he purchased.

Defendant argues that plaintiff's reliance on any alleged statements made by Revenue Officer Gary as to encumbrances on the property, was unjustified as Mr. Gary lacked the authority to alter the conditions of sale. Defendant also contends plaintiff cannot rely on 26 C.F.R. § 601.104 because that regula-

tion provides relief only when the I.R.S. seizes and sells property in which the taxpayer has no interest or when the I.R.S. affirmatively misrepresents the taxpayer's interest to the purchaser. The mere fact that a taxpayer's interest in property turns out to be less valuable will not be regarded as giving that individual a claim against the government. Defendant argues it acted properly in releasing its liens prior to the expiration of the redemption period. Defendant also argues that 26 U.S.C. § 6342 requires that the proceeds of sale be applied to the tax liability of the prior owner, and because the proceeds satisfied this liability, the I.R.S. was then required by 26 U.S.C. § 6325 to release its notice of federal tax liens, which in no way prevented plaintiff from surrendering his Certificate of Sale, upon expiration of the redemption period, for a quitclaim deed to the government's interest in property.

Defendant contends that plaintiff incorrectly asserts that South Carolina law governs whether the I.R.S. properly released its liens prior to the expiration of the 180 day period. Defendant maintains that state law determines the nature of the interest seized and sold, but federal law governs the procedural requirements of an I.R.S. sale. Defendant contends the Internal Revenue Code ("I.R.C.") does not instruct the I.R.S. to wait for the expiration of the 180 day period prior to applying the proceeds to taxpayer's liability and that the timing of the I.R.S.' release of its liens is a procedural question governed by 26 U.S.C. §§ 6325, 6342. Defendant further argues that, even if defendant breached the contract by releasing the liens, the breach itself did not give rise to plaintiff's alleged damages. Defendant contends that plaintiff bears the burden of proving that damages resulted directly from the breach under the court's jurisdictional statutes. Defendant contends plaintiff cannot meet its burden since its damages stem from the foreclosure proceedings of People's S & L rather than from the I.R.S.' release of its liens before the expiration of the 180 redemption

---

**2.** It is fundamental property law that a quitclaim deed passes that title or interest that the grantor has in the subject property *without* professing any warranties or covenants that the title is valid. *See* BLACK'S LAW DICTIONARY 1126 (5th ed.1979).

period. Defendant contends People's S & L had an encumbrance on the property superior to the I.R.S. tax liens. Defendant further maintains that there were additional encumbrances against the property, senior to plaintiff's interest in the property, in the amount of $3,017. Thus, defendant contends any damages suffered by plaintiff were due to senior encumbrances, not the I.R.S.' release of its lien before the expiration of the 180 day redemption period.

Defendant contends that plaintiff also cannot prevail under either its breach of contract or rescission of contract theories. To do so, plaintiff must show that the parties would not have entered into the contract had it known that a prior encumbrance existed on the property. While defendant had conducted a title search and erroneously concluded there were no encumbrances, the Notice of Encumbrance clearly disclaimed any warranty regarding both the correctness and the completeness of that finding. Accordingly, defendant contends that given such a plain disclaimer, plaintiff acted unreasonably in ignoring the obvious possibility of prior liens and encumbrances upon the property. Defendant also contends that even if the parties were mutually mistaken, plaintiff assumed the risk of prior encumbrances by signing the waivers and "as is" provisions, which gave notice that the property was transferred without guaranty as to the validity of title and without recourse against the United States. Finally, defendant argues that plaintiff's defense that he failed to read the terms of contract carefully is completely without merit.

## DISCUSSION

▮ A congressional reference allows a party to seek relief through a private bill passed by Congress, although it shall have no binding precedential value. *See* 28 U.S.C. § 1492 (1994); *Paul v. United States*, 20 Cl.Ct. 236, 266 (1990). In a congressional reference case, the court must determine whether the claim is a legal claim or an equitable claim. A legal claim arises when there is a violation of substantive law. *INSLAW, Inc. v. United States*, 35 Fed.Cl. 295, 302 (1996). When a party's legal rights, such

as those of property, of contract, and against tortious invasion, are violated, the relevant claim is a legal one. *Id.* An equitable claim arises when the plaintiff has a broad moral right to recover based on some unjustified governmental act that caused him harm. *Id.*

▮ The proper standard for summary judgment in a congressional reference case is the same standard this court applies to any case involving a question of summary judgment. That is, a prevailing party must show that there are no genuine issues of material fact in dispute such that the moving party is entitled to judgment as a matter of law. RCFC 56(c). This court may deny both motions or grant one party's motion while denying the other. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In the case at bar, plaintiff relies primarily on a theory of equitable relief from the government. Essentially, plaintiff asks the court to consider whether the United States is justified in refusing to return Mr. Martin's payment for the interest in property sold by the I.R.S. for unpaid federal taxes. According to *INSLAW*, to be successful in an equitable claim plaintiff must show that the government acted unjustifiably leading directly to plaintiff's damages. *INSLAW*, 35 Fed.Cl. at 302. Plaintiff will only be entitled to equitable relief if he successfully proves that his failure to diligently perform his own title search was justifiable and reasonable in light of Revenue Officer Gary's alleged, misleading representations that it was unnecessary for Mr. Martin to do so.

▮ There is an important distinction in determining the body of law that governs federal tax sales and deed executions. While federal law governs the efficacy of an I.R.S. tax sale, state law governs the proper execution of a deed resulting from such a sale. *Fuentes v. United States*, 14 Cl.Ct. 157, 166–67 (1988). "[F]ederal law governs the conduct of the tax sale to recoup unpaid federal taxes." *Id.* at 162. *See also United States v. Manufacturers Nat'l Bank*, 198 F.Supp. 157 (N.D.N.Y.1961). In the case at bar, plaintiff has brought suit for breach of contract and

seeks restitution in the form of a refund of the amount paid at the I.R.S. tax sale, an area governed by federal law.

## I. *Breach of contract*

▉ Plaintiff alleges that, due to defendant's premature release of its lien against the property owned by TMHC, the government lost its priority over other lienholders, and that this priority was the precise benefit for which plaintiff gave consideration. Plaintiff maintains that if defendant had not released its lien until the expiration of the 180 day redemption period, plaintiff could have obtained the deed from defendant and properly recorded it under South Carolina law. The deed would relate back, and grant him the same interest held by the United States when the lien was filed. Plaintiff claims that he could not record the Certificate of Sale because it did not contain an affidavit of a subscribing witness, taken before some statutorily authorized person.[3] Plaintiff argues that, even though the lien held by People's S & L was superior to the lien held by the government, if he had been able to record his interest in the property, he would have been notified of the impending foreclosure sale and given the opportunity to submit a bid and retain his interest in the property.

Plaintiff relies on a case decided by the Supreme Court of Nevada, *Allison Steel Manuf. Co. v. Bentonite*, 86 Nev. 494, 471 P.2d 666 (1970), which addressed this issue and concluded that the successful bidder in a tax sale receives whatever interest the delinquent taxpayer had in the property at the time the government's tax lien attached. The court, in that case, explained, "[w]hen the period of redemption passed, [the pur-chaser] became entitled, without more, to a tax deed from the I.R.S. which conveyed legal title relating back to the time the tax liens attached." *Id.* at 669. However, that case, which holds very little persuasive authority, assumes that there were no superior liens against the subject property.

Plaintiff admits that People's S & L had a lien against the property owned by TMHC that was superior to the lien of the government, *Pl.'s Mot. Summ. J.* at 16–17, and, therefore, the government's interest in the property, at the time it attached its lien, was inferior to the lien held by People's S & L. Considering that plaintiff purchased "only the right, title, and interest of the delinquent taxpayer . . . subject to any prior valid outstanding mortgages, encumbrances or other liens . . . superior to the lien of the United States," DX 4, plaintiff purchased an interest in property with a superior and valid outstanding mortgage. Had the government not released its lien before the expiration of the 180 day redemption period, the only benefit that plaintiff would have received would have been formal notice of the foreclosure sale. This would not have changed plaintiff's position significantly because the property was sold for a substantially higher price than its actual value.

Even if plaintiff would have benefitted from the government's lien remaining on the property until the expiration of the redemption period, plaintiff still would not be entitled to relief pursuant to his legal claim for breach of contract. Defendant was required to release its lien on the subject property once the tax lien was fully satisfied under 26 C.F.R. § 401.6325–1(a).[4] The Tax Equity

---

**3.** South Carolina law requires that:

[B]efore any deed or other instrument in writing can be recorded in [South Carolina], it must be acknowledged or proved by the method described in (A) or (B):

(A)(1) the execution of the deed or other instrument must be first proved by the affidavit of a subscribing witness to the instrument, taken before some officer within [South Carolina] competent to administer an oath . . .

(B) A deed or other instrument must be signed by the grantor, mortgagor, vendor, or lessor and the signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses, taken before some officer within [South Carolina] competent to administer an oath . . .

S.C. CODE ANN. § 30–5–30 (Law. Co-op.1976).

**4.** This section states in pertinent part:

The district director shall issue a certificate of release for a filed notice of Federal tax lien not later than 30 days after the date on which the district director finds that the entire tax liability listed in such notice of Federal tax lien has been fully satisfied. . . .

26 C.F.R. § 401.6325–1(a).

and Fiscal Responsibility Act of 1982 added this requirement for the benefit of taxpayers assuming that a delinquent taxpayer would want a tax lien released immediately after he fulfilled his tax obligation. While unfortunate for plaintiff, there is no case law that would support a finding of breach by this court. During oral arguments, plaintiff's counsel, while indicating that plaintiff is less than sophisticated, admitted that plaintiff's "legal claims are dubious at best." *See* R. at 30.

This court dealt with very similar circumstances in *Meek v. United States*, 26 Cl.Ct. 1357 (1992), in which the purchasers of an interest in property, who mistakenly believed the property was "free and clear" of superior liens, sued the government seeking rescission of contract and a refund of the purchase price after a lien holder senior to the government foreclosed on the property. The court held that the plaintiffs' fatal mistake was in not reading the relevant documents since those documents clearly and unambiguously allocated the risk of unknown, superior liens and defective title on the bidder, as in the case at bar. *Id.* at 1362. In *Meek*, as in this case, plaintiff signed the Sealed Bid Form that clearly gave notice of such risks. *Id.* "Ignorance is never sufficient to constitute a ground of relief if it appears that the requisite knowledge might have been obtained by reasonable diligence. He who averts knowledge to himself cannot later claim lack of knowledge." *Collins v. United States*, 209 Ct.Cl. 413, 420–21, 532 F.2d 1344, 1348 (1976). Plaintiff in the present case cannot claim that he was somehow lured or deceived into believing that there were no superior liens on the subject property. *Levy v. United States*, 10 Cl.Ct. 602, 613 (1986) (stating that, as a matter of law, a plaintiff who waives a reasonable opportunity to discover a title defect by inspecting county records is barred from obtaining rescission or modification of contract to correct for such an oversight after the fact). If plaintiff had responsibly performed even an ordinary title search, he would have been fully aware of all liens, superior or not. Because he negligently failed to search the title, without question he assumed the risk that the property might indeed have prior encumbrances, and this is

what led to the damages plaintiff alleges. *See Meek*, 26 Cl.Ct. at 1363. This court, therefore, will not disturb the agreement into which the parties freely entered and for which consideration was given. To do so would constitute an unjustifiable reallocation of the clear risks assumed by the parties. Accordingly, the court finds that plaintiff's legal claim has no merit.

## II. *Equitable Relief for Misrepresentation*

To prevail on an equitable claim for tortious negligent misrepresentation by the government, plaintiff must prove that the government's representations: were false and material; operated as an inducement to enter into a contract; justified the plaintiff's reliance thereon; and were relied upon by the plaintiff to his detriment. *Edwards v. United States*, 19 Cl.Ct. 663, 670 (1990). A party cannot, however, claim that he was misled into relying on representations when he had "means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means...." RESTATEMENT (SECOND) OF TORTS § 810 (1979).

Plaintiff argues that even if his claim is determined not to be cognizable at law under the equitable standards of a congressional reference, defendant is nonetheless obligated to refund his money pursuant to 26 C.F.R. § 601.104(c)(2). This regulation provides in pertinent part:

> If the [I.R.S.] sells property, and it is subsequently determined that the taxpayer had no interest in the property or that the purchaser was misled by the [I.R.S.] as to the value of the taxpayer's interest, immediate action will be taken to refund any money wrongfully collected if a claim is made and the pertinent facts are present.

26 C.F.R. § 601.104(c)(2). Plaintiff cites a South Carolina case for the defense of mistake, but fails to acknowledge that that case precludes rescission and restitution if the mistaken party was contributorily negligent. *King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125 (S.C.Ct.App.1984). Plaintiff also cites *Paul v. United States*, 20 Cl.Ct. 236, 268 (1990) for

the proposition that the defenses of assumption of risk and contributory negligence can be overcome by the actions of government agents. That case, however, did not contemplate that a plaintiff would voluntarily assume a known risk that has been expressly disclaimed by the I.R.S. in numerous contract documents. *See id.*

In *Woody v. United States,* 9 Cl.Ct. 444 (1986), a similar claim was before this court. Mr. Woody, a successful bidder at a tax lien foreclosure sale, argued that he was entitled to a refund of the amount he paid as a deposit toward the purchase price of the property sold to him. *Id.* at 446. He asserted that he was misled by a notice that the I.R.S. published as to the value of the defaulting taxpayer's interest in the property. This court reasoned that the relevant statute and implementing regulations specified that there were no express or implied guarantees or warranties and that "the consequences of any failure by plaintiff to explore the value of the interest in the property being sold prior to submitting a bid therefore cannot properly be shifted to defendant by an argument that plaintiff was misled by a published notice." *Id.* at 448–49. The law charges plaintiff with constructive knowledge of prior encumbrances of record and will not allow plaintiff to claim ignorance of the bargain struck between the parties for lack of diligence. *Id.* at 449.

Plaintiff maintains not only that Revenue Officer Gary told him that there were no senior encumbrances on the property in question, but that he also insisted that there was no need for plaintiff to search the title personally. Plaintiff relied on Revenue Officer Gary's alleged assurances in his argument that the I.R.S. misled him into bidding on property worth less than he had anticipated. Plaintiff argues that, because of this reliance, he did not perform his own title search and thus did not learn of People's S & L's superior lien against and impending foreclosure on the property. The government denies that Revenue Officer Gary made these assurances. Revenue Officer Gary explained that, after conducting his own title search, he did not believe that there were any encumbrances, but that he would never have dissuaded a potential bidder from conducting a separate search independent of the search conducted on behalf of the I.R.S. *Gary Decl.,* Exh. C; Pl.'s App. 9. It is well-settled that even if I.R.S. officers have such information regarding pre-existing encumbrances on subject property, they are under no duty to volunteer such information prior to sale. *Fuentes,* 14 Cl.Ct. at 162. Further, in order to show justifiable reliance, plaintiff must establish that such reliance was reasonable. *See Heckler v. Community Health Svcs.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The actions ascribed by plaintiff to Revenue Officer Gary simply cannot be construed as preventing plaintiff from diligently performing his own title search.

While there is an issue as to whether and what extent the alleged conversations between Mr. Martin and Revenue Officer Gary occurred, this factual dispute is not material. Defendant points out that plaintiff submitted his bid on Bid Form 2222, which contained numerous express disclaimers on its reverse side:

> The right, title, and interest of the taxpayer (named above) in and to the property is offered for sale subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States. All property is offered for sale "where is" and "as is" and without recourse against the United States. No guaranty and warranty, expressed or implied, is made as to the validity of the title, quality, quantity, weight, size, or condition of any of the property, or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any expressed or implied representation.

*Df.'s Mot. Summ. J.,* App. at 6. Further, plaintiff has admitted that Revenue Officer Gary showed Mr. Martin completed Form 2434–B, which restates these waivers. *Pl.'s Br.* at 13.

The facts in *Pia v. United States,* 7 Cl.Ct. 208 (1985), *aff'd,* 818 F.2d 876 (Fed.Cir.1987) are strikingly similar to the facts of the

instant case. In *Pia*, a dispute arose from a tax sale of seized property and a subsequent foreclosure of that property by a holder of a prior lien. Pia contended that the revenue officer involved stated, in a telephone conversation, that there were no superior encumbrances on the property and that it was in excellent condition. *Id.* at 210. Pia purchased the property, and later learned of a mortgage held by Home Federal Savings & Loan Association. *Id.* After Home Federal foreclosed on the property, Pia demanded a refund of the deposit previously paid. *Id.* Pia argued that a conversation with the revenue agent regarding the status of the property misled and discouraged her from conducing an independent title search. *Id.* at 211. This court explained that *even if* it accepted Pia's version of events, the plaintiff's argument would nonetheless fail, because:

> The transaction required, and defendant conveyed, a quitclaim deed.... In addition, the sale was subject to several written disclaimers. In the notice of encumbrance of property offered for sale which was distributed and read before the auction, the I.R.S. advised bidders "to verify for themselves" the nature of the title. The disclaimer also stated the property was offered "where is" and "as is" and without recourse to the United States. When the government sells property with such express disclaimers, the risk is on the purchaser.

*O'Donnell v. United States*, 166 Ct.Cl. 107, 109, 1964 WL 8622 (stating that even if the government negligently misrepresented information, the "plaintiff's own negligence vitiates any 'equitable claim' which might have existed"); *Pia*, 7 Cl.Ct. at 211 (citing *Varkell v. United States*, 167 Ct.Cl. 522, 524–25, 334 F.2d 653 (1964) (stating that the purchaser bears the risk of defective title where the government offers property "as is" and "where is"); *American Sanitary Rag Co. v. United States*, 142 Ct.Cl. 293, 161 F.Supp. 414 (1958)); *United States v. Hathaway*, 242 F.2d 897 (9th Cir.1957); *Standard Magnesium Corp. v. United States*, 241 F.2d 677, 679 (10th Cir.1957).

*Pia* controls. In the present case, it is equally clear that numerous disclaimers existed on the various documents that plaintiff signed, and the government cannot be held responsible for plaintiff's carelessness and irresponsibility. Moreover, plaintiff has not shown that his damages stemmed from defendant's release of its lien before the expiration of the 180 redemption period rather than the foreclosure proceedings of People's S & L. Any damages suffered by plaintiff were due to senior encumbrances, not the I.R.S.' release of its lien before the expiration of the 180 day redemption period, and plaintiff expressly assumed the risk of any such senior encumbrances by signing the numerous express waivers of warranty. Sophisticated or not, plaintiff cannot be completely excused from his failure to exercise due diligence as a reasonable purchaser at an I.R.S. tax sale simply because the matter is before the court as a congressional reference. To the contrary, the risk undertaken by plaintiff in purchasing an interest in property at a federal tax sale, which by its very nature is a highly speculative enterprise, should not be retroactively reallocated in the name of equity, especially when the subsequent injury was indisputably brought about by plaintiff's own irresponsible conduct.

### CONCLUSION

For the reasons set forth above and after careful consideration of the arguments and applicable law, the court recommends the award of no compensation either at law or in equity because an award of damages in the present case would be a mere gratuity. Accordingly, defendant's motion for summary judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED.