**Daniel KOBY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–317C.**

United States Court of Federal Claims.

June 21, 2000.

---

Arthur A. Oshiro, Saavedra & Zufelt, Long Beach, CA, attorney of record for plaintiff.

Kyle Chadwick, U.S. Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## OPINION

ALLEGRA, Judge.

This contract case is before the court on plaintiff's motion for partial summary judgment regarding liability and defendant's cross-motion for summary judgment. There are two issues in dispute. First, whether an Internal Revenue Service sale of seized property pursuant to 26 U.S.C. §§ 6335–39 to collect back taxes, gives rise to a contract, either express or implied-in-fact, between the government and the purchaser of such property—here, the plaintiff. Second, if a contract does exist, whether defendant breached it by voiding the tax sale due to defendant's failure to give notice of the sale to the taxpayer/owner of the property. After careful consideration of the briefs filed by the parties, the oral argument, and for the reasons discussed below, the court GRANTS plaintiff's motion for partial summary judgment regarding liability and DENIES defendant's cross-motion for summary judgment.

### I. Facts [1]

On March 25, 1997, the Internal Revenue Service ("IRS") seized a 20–unit apartment complex located in Oceanside, California ("Oceanside property") due to the nonpayment of internal revenue taxes by the property's owner, Ronald D. Bachrach. That same day, the IRS issued a Notice of Public Auction Sale ("Notice") which stated that on April 30, 1997, the Oceanside property would be sold at public auction pursuant to section 6335 of the Internal Revenue Code of 1986, 26 U.S.C. § 6335 (1994). The Notice provid-

---

1. Defendant agrees that plaintiff's proposed findings of uncontroverted facts, filed November 29, 1999, are undisputed. Accordingly, by order dated January 3, 2000, the court deemed those facts stipulated for purposes of the pending motions. These facts shall also be deemed established for purposes of future proceedings in this case. See RCFC 56(e).

ed that full payment of the bid price was required on acceptance of the highest bid. The back of the Notice stated as follows:

> The right, title and interest of the taxpayer (named on the front of this form) in and to the property is offered for sale *subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States.* All property is offered for sale "where is" and "as is" and *without recourse against the United States.* No guarantee or warranty, express or implied, is made as to the validity of the title, quality, quantity, weight, size or condition of any of the property, or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any expressed or implied representation.

(Emphasis added).

At the April 30, 1997, tax auction, plaintiff, Daniel Koby, was the successful bidder for the Oceanside property. Plaintiff paid the sale price of $171,000, in full, on the day of the sale and received an IRS Form 2435, Certificate of Sale of Seized Property ("Certificate of Sale"), from IRS Revenue Officer M. Rude. The front of the Certificate of Sale noted the date and place of sale, the taxpayer's name, a description of the property sold, the sale amount, the purchaser's name and address, and the revenue officer's signature and address. The front of the Certificate of Sale further stated that "[t]he above property was sold at the highest bid received, and receipt of the bid amount is acknowledged. The sale was conducted as provided by Subchapter D, Chapter 64, of the Internal Revenue Code and related regulations." The back of the Certificate of Sale provided the following "Notice to Purchaser or Purchaser's Assignee" with regard to real property:

**Real Property**

> If the real property is not redeemed within the time prescribed in section 6337 of the Internal Revenue Code, a deed will be issued as soon as possible after the surrender of this certificate. The deed will convey the right, title, and interest of the taxpayer in and to the real property. . . .

This notice further stated:

**Redemption Rights**

The rights of redemption of real estate after sale, as specified in Code Section 6337(b), are quoted below:

> (b) Redemption of Real Estate After Sale.
>
> (1) Period.—The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 180 days after the sale thereof.
>
> (2) Price.—Such property or tract shall be permitted to be redeemed upon payment to the purchaser, or in case he cannot be found in the county in. which the property to be redeemed is situated, then to the Secretary, for the use of the purchaser, his heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum.

The back of the Certificate of Sale also recited in full 26 U.S.C. § 6338 (Certificate of Sale: Deed of Real Property), and 26 U.S.C. § 6339 (Legal Effect of Certificate for Sale of Personal Property and Deed of Real Property) as "Applicable Sections Under The Internal Revenue Code."

At some point in early July 1997, the IRS determined that it had failed to give the taxpayer, Mr. Bachrach, notice of the sale of his Oceanside property as required by section 6335(b). In a letter dated July 18, 1997, IRS Revenue Officer Rude informed plaintiff that due to its failure to provide such notice, the IRS had decided to return plaintiff's $171,000 and conduct a new seizure and sale of the Oceanside property. By letter to plaintiff dated September 22, 1997, James J. Posedel, an attorney with the Office of Chief Counsel, IRS, District Counsel, Southern California District, explained the reason why the IRS had voided the tax sale to plaintiff as follows:

The sale to Mr. Koby was not conducted in accordance with the sale provisions of the Internal Revenue Code and the sale to him was invalid. It is for this reason that Mr. Rude returned Mr. Koby's funds to him and conducted a second sale of the subject property.

The Oceanside property was resold by the IRS at a second tax sale held on August 29, 1997. Thomas W. McNamara purchased the property on that date for $155,000.

## II. Discussion

Plaintiff has filed a motion for partial summary judgment regarding liability, arguing that, as a matter of law, the tax sale gave rise to a contract which defendant breached by voiding the sale. Plaintiff argues that the tax sale contract provided that defendant must issue a deed to plaintiff for the Oceanside property if the taxpayer/owner did not redeem the property within 180 days of the tax sale. Plaintiff further claims that defendant's failure to give notice to the taxpayer/owner prior to the tax sale as required by section 6335(b) made the tax sale voidable at the option of the taxpayer/owner, but not void as a matter of law or voidable at the option of the government. Plaintiff concludes that by voiding the tax sale before the end of the 180 day redemption period, returning plaintiff's money, and reselling the property in a second tax sale, defendant breached the tax sale contract. Defendant has filed a cross-motion for summary judgment, arguing that no contractual responsibilities arose from the tax sale, and thus, no breach could occur.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As noted, the facts material to the motions are undisputed. Based on those facts, the court concludes, as a matter of law, that plaintiff is entitled to prevail on the issue of liability.

## A. Enforceable Contract

■ The first issue before the court is whether a contract arose between the parties upon completion of the tax sale. In order to establish the existence of an enforceable contract with the United States, a party must prove "a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma Service Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997). In addition, a party must demonstrate "that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Id.* These requirements apply to both express and implied-in-fact contracts. *Id. See also City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir. 1998); *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Gregory v. United States,* 37 Fed.Cl. 388, 395 (1997).

■ All of the elements of a binding contract with the United States are manifest in the instant case. First, at the tax auction on April 30, 1997, plaintiff offered to buy the Oceanside property by submitting a bid of $171,000. Defendant accepted this offer, as the highest bid for the property. Upon acceptance of his bid, plaintiff paid consideration of $171,000 to defendant. Defendant then issued a Certificate of Sale to plaintiff which indicated that plaintiff was the purchaser of the Oceanside property and set forth the terms of the sales agreement. These facts evidence a mutual intent to contract between defendant and plaintiff. Finally, as defendant concedes, the revenue officer who performed the sale of the Oceanside property had actual authority to bind the government with respect to the sale of that property. Because the contract which arose from the tax sale is "manifested by words, either oral or written, which contain[ ] agreement and/or mutual assent," rather than "one inferred from the circumstances or acts of the parties," it is an express contract and not one implied-in-fact as argued by plaintiff. *Webster University v. United States,* 20 Cl. Ct. 429, 432–33 (1990). *See also City of Cincinnati,* 153 F.3d at 1377 ("[A]n implied-in-fact contract arises when an express offer

and acceptance are missing but the parties' conduct indicates mutual assent.").

■ Despite the existence of all the elements of an express contract, defendant argues that no contract arose between the parties because the obligations under a tax sale of seized property are governed solely by 26 U.S.C. §§ 6335–39. While, assuredly, these provisions delineate the procedural requirements of a tax sale, they do not preclude the formation of a contract, but rather constitute the heart of the contract formed upon a tax auction. It is widely accepted that contracts can incorporate statutory and regulatory requirements,[2] and this court has applied this principle repeatedly in treating a tax sale of seized property as an enforceable contract between the IRS and the purchaser. *See Martin v. United States*, 37 Fed.Cl. 86, 92 (1996) (In finding no breach of the tax sale contract, this court noted that it "will not disturb the agreement into which the parties freely entered and for which consideration was given."). *See also Wittmann v. United States*, 37 Fed.Cl. 239 (1997) (finding no breach of tax sale contract); *Meek v. United States*, 26 Cl.Ct. 1357, 1363 (1992) (in finding no breach of tax sale contract, the court stated that it would "not redistribute the risks plaintiffs undertook by their own failure to read the contract they signed."), *aff'd*, 6

F.3d 788 (Fed.Cir.1993); *Burgos Fuentes v. United States*, 14 Cl.Ct. 157 (1987) (finding breach of tax sale contract by IRS for failure to comply with terms of contract, although such breach was deemed harmless error as to plaintiff purchasers' damages); *Pia v. United States*, 7 Cl.Ct. 208, 212 (1985) (finding no breach of tax sale contract where there was "no showing that [the IRS officer] had the authority to alter the express terms of the contract."), *aff'd*, 818 F.2d 876 (Fed. Cir.1987).[3] Defendant thus is sorely mistaken in claiming that the IRS provisions in question somehow prevented the formation of a contract here—the contrary is clearly the case.

## B. Breach of Contract

Having established the existence of an enforceable contract between the parties, the second issue is whether the contract was breached when defendant voided the sale of property to plaintiff because it failed to follow the tax sale procedures. On this count, the obligations of the parties under the contract are set forth in the various tax sale documents, including the Notice of Public Auction Sale and the Certificate of Sale of Seized Property. The back of the Certificate of Sale provided that "[i]f the real property is not redeemed within the time prescribed in

---

**2.** *See Norfolk and Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 130, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.") (quoting *Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond*, 262 U.S. 649, 660, 43 S.Ct. 651, 67 L.Ed. 1157 (1923)); *United States v. Insurance Co. of North America*, 131 F.3d 1037, 1042 (D.C.Cir.1997) ("When a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract.").

**3.** *Accord Bonnett Enters., Inc. v. United States*, 889 F.Supp. 208, 212 (W.D.Pa.1995) (finding that "claim against the IRS arising out of a Notice of Bid Sale is clearly a contractual dispute with the United States exceeding $10,-000.00" and thus within the exclusive jurisdiction of the Court of Federal Claims). Indeed, decisions holding that a contract arises in the

context of a tax sale are consistent with section 338.43(1) of the Internal Revenue Manual, which provides:

> A sale by public auction or sealed bids is nothing more than the solicitation of an offer to purchase particular property sought to be sold by the Government. No contractual relationship arises upon submission of the bid. When the revenue officer conducting the sale declares a bid accepted, a contract results which is binding upon both the offeror and offeree-Government. *Joseph Rugo, Inc. v. Henson*, 190 F.Supp. 281 (D.Conn.1960). Since the contract embodies all the terms and conditions of the sale, it is important that vital information, as to manner of payment, what is being sold, etc., be made clear to prospective purchasers.

Internal Revenue Manual, Legal Reference Guide for Revenue Officers, § 338.43(1) (1987). While the IRS Manual does not have the force of law, *see Anderson v. United States*, 44 F.3d 795, 799 (9th Cir.1995), it is notable that the argument advanced by defendant here is contrary not only to the case law, but to the IRS' own pronouncement on the subject.

section 6337 of the Internal Revenue Code, a deed will be issued as soon as possible after the surrender of this certificate." Section 6337, which is also printed on the back of the Certificate of Sale, further provided that "[t]he owners of any real property sold as provided in section 6335 ... shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 180 days after the sale thereof." 26 U.S.C. § 6337(b)(1) (1994). Accordingly, the terms of the tax sale contract clearly provide that the purchaser will receive a deed for the purchased property if the taxpayer/owner does not redeem such property within 180 days of the tax sale. Here, there was no such redemption and thus, the defendant's failure to provide the deed constituted a breach unless the sales contract was somehow voided.

Consistent with the IRS' prior representations to plaintiff, defendant, in its briefs, intimated that the IRS was authorized to void the tax sale during the 180 day redemption period because the IRS failed to comply with section 6335, which requires that notice of the sale of seized property be given to the owner thereof before the sale takes place.[4] IRS Revenue Officer Rude plainly did not give that notice until after the sale. Whether that failure authorized the IRS to void the tax sale depends upon whether this defect rendered the tax sale void as a matter of law or voidable, and if voidable, by whom. At oral argument, however, defendant conceded that if this court should find that a contract exists, then the failure to give notice in accordance with section 6335 rendered the contract voidable at the option of the taxpayer, not void as a matter of law or voidable at the option of the government or third parties.

4. Section 6335(b) provides, in pertinent part:
   **Notice of sale.**—The Secretary shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made .... Such notice shall specify the property to be sold, and the time, place, manner and conditions of the sale thereof....
   26 U.S.C. § 6335(b) (1994). Section 6335(a) describes the manner in which notice should be given to the owner of the seized property:

While this belated concession properly may be viewed as resolving this issue, the tension between the IRS' prior statements and the defendant's briefs, on the one hand, and defendant's statement at oral argument, on the other, suggest that this court should determine whether the defendant's concession is supported by the law. And, indeed, it is.

■ "To determine whether a contract is voidable or void, courts typically ask whether the contract has been made under conditions that would justify giving one of the parties a choice as to validity, making it voidable, *e.g.,* a contract with an infant; or whether enforcement of the contract would violate the law or public policy irrespective of the conditions in which the contract was formed, making it void, *e.g.,* a contract to commit murder." *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 431–32, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (Breyer, J., concurring). *See also Blistein v. St. John's College,* 74 F.3d 1459, 1465–66 (4th Cir.1996). Applying this analysis to the instant case, the court thus looks to the purpose of the notice requirements of section 6335, which have been held to be "for the obvious protection of the taxpayer faced with the loss of his property." *Aqua Bar & Lounge, Inc. v. United States,* 539 F.2d 935, 939 (3d Cir.1976) (citing *Reece v. Scoggins,* 506 F.2d 967, 970–71 (5th Cir. 1975)). As explained by the Fifth Circuit in *Reece:*

> Governmental seizure and sale of land is one of the most potent weapons in the government's tax collection arsenal. The consequences of seizure and sale are often staggering and irreversible; this action not only deprives a taxpayer of a sometimes significant capital investment but also de-

   As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property ... or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address....
   26 U.S.C. § 6335(a) (1994).

nies him a source of additional income. Seizure and sale are therefore generally available only as a last resort. In recognition of the Damoclean nature of this ultimate weapon, Congress has imposed precise strictures on the seizure and sale of property to satisfy legitimate tax deficiencies. The § 6335 notice requirements are designed to protect the taxpayer by giving him an opportunity to be present at the tax sale and bid on the property. *United States v. Conry*, Civ. No. C–73–2041, 74–1 U.S.T.C. ¶ 9187, 1973 WL 700 (N.D.Calif. Dec. 28, 1973); *Bartell v. Riddell*, 202 F.Supp. 70 (S.D.Cal.1962). *Cf. McAndrews v. Belknap*, 141 F.2d 111, 114 (6th Cir.1944). The language of this section is clear and mandatory; absent literal compliance with its provisions, the government sale of land cannot stand.

506 F.2d at 971. *See also Kulawy v. United States*, 917 F.2d 729, 734 (2d Cir.1990).

■ Because the procedures for seizure and sale of property by the IRS under section 6335 exist for the protection of the taxpayer/owner, and not for the benefit of the government, third parties or the public interest, a number of courts have held that a failure by the IRS to follow strictly such provisions renders a tax sale voidable at the option of the taxpayer/owner, as opposed to void as a matter of law or voidable by the government. *See Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir.1991) (due to failure to give notice pursuant to § 6335, "as between Goodwin [the taxpayer] and the government, the seizure and sale of the Gladstone property was invalid"); *Reece*, 506 F.2d at 970 (due to failure of IRS to provide the statutory notice of sale, the sale was "voidable *ab initio*"); *Johnson v. Gartlan*, 470 F.2d 1104, 1106 (4th Cir.) (where IRS failed to comply with procedures of § 6335, tax sale was valid due to ratification by the taxpayer), *cert. denied*, 414 U.S. 865, 94 S.Ct. 122, 38 L.Ed.2d 85 (1973); *United States v. Conry*, No. C–73–2041, 1973 WL 700, at *2 (N.D.Cal. Dec. 28, 1973) ("failure to comply with this notice has been held to render the sale voidable at the option of the taxpayer/owner") (citing *Johnson v. Gartlan*, 470 F.2d 1104); *Bartell v. Riddell*, 202 F.Supp. 70, 75–76 (S.D.Cal.1962). *See also* 14 Jacob Mertens, Jr., *The Law of Federal Income Taxation* § 49E:23 (1997).[5]

■ The court accepts the rationale of these decisions and holds that a failure to provide notice pursuant to section 6335 makes the subsequent tax sale voidable only at the option of the taxpayer. Therefore, defendant had no authority to void the sale of the Oceanside property to plaintiff. By voiding the tax sale, defendant breached its contract with plaintiff and is liable for any damages resulting therefrom. *Cf. Burgos Fuentes*, 14 Cl.Ct. at 168–69 (finding breach of tax sale contract by IRS for failure to comply with terms of contract, although such breach was deemed harmless error as to the purchasers' damages).

## III. Conclusion

Based on the foregoing, the court concludes that the IRS breached the sales con-

---

5. In *Bartell v. Riddell*, a case with facts similar to those in the instant case, the court explained:

> [I]t appears obvious that the notice requirements of 26 U.S.C. § 6335 which were overlooked in connection with the first sale were intended to protect the taxpayer, by affording him an opportunity to appear and bid on the property. Failure to comply with these requirements gave the taxpayer a right to avoid the sale, a right which he appears to have relinquished for a valuable consideration. There is nothing whatever to suggest that these particular notice requirements were intended to protect the United States or third parties or that any sale conducted without full compliance therewith is absolutely void.

202 F.Supp. at 75–76. Section 338.44(1) of the Internal Revenue Manual similarly states:

> The provisions of the Internal Revenue Code of 1954, relating to the sale of seized property are for the protection of the taxpayer. A sale is not void because of noncompliance with the provisions of IRC 6335, but is voidable by the owner of the property. *Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935 (3rd Cir. 1976), *on remand*, 438 F.Supp. 655 (E.D.Pa. 1977). The Government cannot of its own accord resell property because of its failure to comply with the sale provisions of the Code. *Bartell v. Riddell*, 202 F.Supp. 70 (S.D.Cal. 1962); *United States v. Conry*, 74–1 U.S.T.C. ¶ 9187, 1973 WL 700 (N.D.Cal.1973).

Internal Revenue Manual, Legal Reference Guide for Revenue Officers, § 338.44(1) (1987).

tract that arose from the auction in question. Defendant's contrary assertion that no contract exists is unfounded and, by defendant's own stark admission, not supported by even a single case. Moreover, defendant's position on this issue is directly contrary to an explicit and unambiguous statement made in the IRS' own manual, which clearly indicates that a contract exists in the situation presented by this case. While, at oral argument, defendant emphasized that it had taken its position in consultation with the IRS, implying that the position had been taken in deference to the latter agency, it is the Justice Department, and not the IRS, which controls the litigating position advanced herein, *see* 28 U.S.C. §§ 516–19 (1994). And, it is the Justice Department, and not its client agency upon whom the responsibility for pursuing an argument so unfounded and unsupported must fall.[6] In these circumstances, there is a strong reason to believe that the position of the United States on this motion was not substantially justified. *See* 28 U.S.C. § 2412(b) (1994).

In sum, the court GRANTS plaintiff's motion for partial summary judgment regarding liability and DENIES defendant's cross-motion for summary judgment. As agreed by the parties, damages will be determined in a separate proceeding.

6. Compare the following inscription which is carved into the rotunda of the Attorney General's office: "The United States wins its point when justice is done its citizens in the courts."